[No. E001509. Fourth Dist., Div. Two. Apr. 2, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
VERNON HOWARD McKINZIE, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976(b), the portion of the opinion to be published follows.

**COUNSEL**

Handy Horiye, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Peter Quon and Raquel M. Gonzales, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**McDANIEL, J.**—Defendant was charged with murder (Pen. Code, § 187), and with use of a firearm in commission of the crime (Pen. Code,

§ 12022.5). He was tried and convicted of both the offense and the enhancement. His motion for new trial was denied, and defendant has appealed his conviction.

## FACTS

Late one Friday evening defendant Vernon McKinzie returned home from his job as security guard. For several days, the victim Linda Pallireto had been in the process of breaking off their off-and-on, live-in relationship; their last argument had occurred that Friday morning. When McKinzie arrived at the house the two shared, he found it dark. He decided to go across the street to see if Linda was at her cousin Susan's house. Linda and Susan were at home in the living room, watching television; Susan's three-year-old was asleep in another room. Linda lay on Susan's couch, her crippled leg propped up, and a partially consumed 12-pack of beer was accessible beside the sofa.

Of the next series of events, there were only two surviving witnesses, Susan and defendant, both of whom testified. By Susan's account, within minutes of defendant's arrival home, which she witnessed through her living room window, he was banging at her front door, demanding to see Linda. Linda spoke to him from her position on the couch, through the door which remained closed, and told him they had nothing to talk about, and that she was not going home. The defendant left, returned to the "shared" house, and entered. Linda and Susan heard a crash, and could see that the window cooler had been thrown through the glass. Soon Susan saw a fire in the kitchen across the street, which, according to defendant, he had made in a pot on the stove to attract the women's attention. Susan then heard the sound of defendant's jeep being moved, and defendant again appeared, this time at the kitchen window on the side of Susan's house facing out into the darkened carport. Again he attempted to get Linda to come home, and said he needed money. The two women remained in the living room, and Linda responded from her position on the couch, asking defendant about $100 missing from her checking account. Defendant chastised Linda for her continued beer drinking. The conversation became heated, and Susan heard the sound of a window breaking. Susan's child was awakened, more acrimonious words were exchanged about the wakened child and broken window, and again defendant left Susan's home.

About eight to nine minutes later, Susan heard a click which sounded like the bolt of a gun being drawn back. Apparently Linda thought the same, for she asked Susan if she had a gun in the house. The house contained no gun and no telephone. Immediately after the clicking noise, defendant called out from his position at the kitchen window, saying he would go home if

Linda gave him some beer. Linda got up, and without crutches, laboriously made her way to the kitchen window, carrying one can of beer. She arrived at the window, and held up the can of beer. A conversation of about 20 seconds ensued between defendant and Linda, which Susan did not hear. Linda pivoted on her bad leg, gave Susan a wry look which Susan interpreted as indicating that Linda had capitulated, "that she was going to go out the front door and then he was going to beat the crap out of her." According to Susan's testimony, Linda turned away from the window, and four to five shots rang out in rapid succession. In fact, three shots were fired, and Linda was hit by three hollow point fragmenting bullets, all in the abdominal area.

Defendant burst through the front door, rifle in hand, and kneeled down beside Linda, pointed the rifle at her, and said "I told you. I told you. Oh God how could I have killed somebody that I love." Linda however, was not dead, and defendant picked her up, demanded the use of Susan's car, and rushed Linda to the High Desert Hospital. As he pulled up to the emergency entrance, the security guard testified that defendant handed over the victim, admitted the shooting, and asked the guard to arrest him. When the guard refused to arrest him, defendant, who feared being shot himself by the victim's mother, ran off. Defendant did not say to the guard that the shooting was accidental. Within minutes, defendant showed up at the Morongo Substation, approached the deputy on duty, and said "I'm in trouble. I think I'll be safer here. I love her. I don't know why I did it." Again, amid the torrent of words, there was still nothing said about the shooting having been accidental.

Linda died approximately one month later from complications which had resulted from her wounds.

DISCUSSION*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

III

ERROR IN INVOLUNTARY MANSLAUGHTER JURY INSTRUCTION

The instructions given in connection with involuntary manslaughter included an instruction on misdemeanor manslaughter, based on the inherently dangerous misdemeanor violation of Penal Code section 417, subdivision

---

*See footnote, *ante,* page 789.

(a)(2), brandishing a weapon. Also given was an instruction on criminally negligent manslaughter, killing resulting from the doing of a *lawful* act in an unlawful manner or without due caution and circumspection. On this point, we understand defendant's argument to be the following: defendant claims that there was insufficient evidence to support a finding of brandishing a weapon, therefore the jury was left to convict defendant of either first degree murder, or criminally negligent involuntary manslaughter. Because all of defendant's acts were *unlawful* (defendant lists trespass and vandalism, among others), the jury would not find the criminal negligence manslaughter instruction applicable, and would therefore convict defendant of first degree murder in order to convict him of any crime at all. Theoretically, however, if defendant had committed a *felony* not inherently dangerous to human life, but committed without due caution and circumspection, another theory of involuntary manslaughter would be available to him, resulting in the possibility of conviction of a lesser crime than first degree murder. (See *People* v. *Burroughs* (1984) 35 Cal.3d 824, 835 [201 Cal.Rptr. 319, 678 P.2d 894]; and *People* v. *Morales* (1975) 49 Cal.App.3d 134 [122 Cal.Rptr. 157].) Defendant argues, by analogy to this "felony manslaughter" doctrine, that the misdemeanor manslaughter doctrine should be extended to *noninherently* dangerous misdemeanors committed without due caution and circumspection, and that he should have been given the benefit of such an extension in the instructions to the jury. (See *People* v. *Wright* (1976) 60 Cal.App.3d 6, 11, fn. 5 [131 Cal.Rptr. 311] for a discussion of the need to rewrite the involuntary manslaughter statute.)

 It should be apparent from the structure of the argument outlined above, unless we find insufficient evidence to convict defendant of a violation of Penal Code section 417, subdivision (a)(2), that we never reach defendant's bid for extension of the misdemeanor manslaughter doctrine. Defendant's primary argument is that a violation of Penal Code section 417, subdivision (a)(2),[1] which requires the brandishing of a weapon to occur in the *presence* of the victim, requires *awareness* on the victim's part that a gun is being brandished. Defendant contends that there was no such awareness on the part of Linda, and therefore insufficient evidence to support the giving of a misdemeanor manslaughter instruction.

We have been directed to no decided cases in which the elements of a violation of Penal Code section 417, subdivision (a)(2) were at issue. De-

---

[1] "(a)(2) Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, in a rude, angry, or threatening manner, or who in any manner, unlawfully uses the same in any fight or quarrel is guilty of a misdemeanor punishable by imprisonment in the county jail for a term of not less than three months and not to exceed six months or by both imprisonment and a fine not exceeding Five Hundred Dollars ($500)."

fendant cites us one case, *People* v. *Chavira* (1970) 3 Cal.App.3d 988 [83 Cal.Rptr. 851], for the following language: "[Defendant committed a violation of § 417], since the record clearly shows that the weapon was seen by the victims, was pointed at them, and fired; every element of a violation of section 417 appears." (*Id.*, at p. 992.) Defendant would have us believe that the recitation by the court of the fact that the victim saw the weapon was sufficient to elevate that fact to "element" status. However, the argument clearly fails. An examination of the statute and the applicable jury instruction (CALJIC No. 16.290) discloses that neither pointing the gun at the victim, nor firing it, also mentioned by the *Chavira* court, are elements of the crime. The court is obviously reciting the facts in that case which show a *clear* violation of the statute. The court does not purport to enunciate the factual *minima,* the "elements," required for a violation. Defendant cannot have his cake and eat it too; if the victim's awareness of the weapon is an element, so are pointings and firings. That the latter two are not is a clear *reductio ad absurdum* of defendant's argument.

We have found other cases which, although failing to consciously enunciate all elements of a Penal Code section 417, subdivision (a)(2) violation, clearly indicate that the victim's *awareness* of the weapon that is "in her presence" is not one of them. *People* v. *Norton* (1978) 80 Cal.App.3d Supp. 14 [146 Cal.Rptr. 343] held that a violation of Penal Code section 417 is a general intent crime (*id.*, at pp. 25-26); *People* v. *Mercer* (1980) 113 Cal.App.3d 803 [169 Cal.Rptr. 897], indicates the offense is complete on *exhibition* of the weapon in a rude, angry, or threatening manner. Finally, the court in *People* v. *Andrade* (1978) 86 Cal.App.3d 963 [150 Cal.Rptr. 662], stated "This misdemeanor does not involve much more than a possession. Arguably perhaps it is but a dangerous form of possession." (*Id.*, at p. 971.) ██ There is nothing in any of these cases to support grafting upon the "in the presence of a victim" language a requirement that the victim be aware of the brandishing. For purposes of the conduct which the statute is meant to deter, it is enough that the brandishing be in public, in the presence of the victim, where some third party happening along might get the idea that either the victim or brandisher need help, or might think a brawl is in the making which he might join. The thrust of the offense is to deter the public exhibition of weapons in a context of potentially volatile confrontations. The victim's unawareness of the weapon does little to mitigate the danger inherent in such situations. ██ Therefore, we decline to require the victim's awareness of the weapon in her presence for a violation of Penal Code section 417, subdivision (a)(2).

Defendant's second contention is that there was insufficient evidence that the firing of the weapon was intentional. As we have said before, firing the weapon is not an element of a Penal Code section 417, subdivision (a)(2)

violation. Defendant does not claim his possession of the weapon, which *is* an element, was unintentional, therefore the evidence was sufficient to sustain a finding of violating Penal Code section 417, subdivision (a)(2).

IV*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### DISPOSITION

The conviction is affirmed. The judgment ordering payment of the $8,000 restitution fine is vacated and the cause remanded to the trial court for the appropriate finding and any further action with reference to the restitution issue.

Rickles, J., concurred.

Kaufman, Acting P. J., concurred in the judgment.

Appellant's petition for review by the Supreme Court was denied July 9, 1986.

---

*See footnote, *ante,* page 789.