[No. C036107. Third Dist. July 16, 2002.]

In re MICHAEL D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL D., Defendant and Appellant.

COUNSEL

Janice Wellborn, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, John G. McLean and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**NICHOLSON, J.**—The juvenile court sustained a petition alleging the minor, Michael D., violated Penal Code section 417.4, exhibiting an imitation firearm against another in such a way as to cause a reasonable person apprehension or fear of bodily harm. On appeal, the minor asserts, among other things, he did not violate Penal Code section 417.4 because the person against whom he exhibited the imitation firearm did not experience apprehension or fear. Instead, a bystander experienced apprehension or fear. We conclude the minor violated the statute and therefore affirm.

FACTS

On January 25, 2000, Kathy Russell was employed at John Sloat Basic Elementary School as an office manager. Around 1:30 p.m., while school was in session and the children were in their classes, Russell heard people talking on the playground next to the office—voices of people older than the elementary schoolchildren. She went to the window and saw three teenage boys on the playground, apparently acting silly and laughing. The minor, who was one of the boys on the playground, was holding what appeared to be a handgun. He was pointing it straight out at a smaller boy, Andre A., from a distance of about 15 feet. Andre was ducking and had an odd expression on his face, as if he was pleading not to be shot.

Immediately after Russell saw the minor had a gun in his hand, she dropped to the ground, exclaimed "they have a gun," moved away from the window, and immediately took steps to alert the teachers, the principal, and the police of the "unsafe situation." Russell and some of the teachers in an adjoining room initiated the school's emergency procedures by "locking down the school."

The three boys, including the minor, were detained at a nearby convenience store, and Russell and a teacher who also witnessed the boys through

the window were transported to that location to determine whether an identification could be made. They identified the minor as having been the one who had the gun. The boys, however, did not have a gun with them when they were detained, so they were released. Soon thereafter, the police, acting on a tip from another boy, searched the three teenagers again and found an inoperable replica of a handgun in Andre's clothing.

## PROCEDURE

The minor was the subject of several petitions alleging violations of criminal statutes over time. The allegations found true included such crimes as unlawful taking and driving of a vehicle (Veh. Code, § 10851, subd. (a)), battery (Pen. Code, § 242; further unspecified statutory references are to the Penal Code), and escape (Welf. & Inst. Code, § 871, subd. (a)). The subsequent petition at issue here was filed on January 27, 2000, and alleged several crimes relating to the incident at John Sloat Basic Elementary School. During the jurisdictional hearing and on the prosecution's motion, the court amended the petition to allege a violation of section 417.4. The court found this allegation true. Later, the court committed the minor to the California Youth Authority for a total term of three years eight months, which included a term of two months for the violation of section 417.4.

The minor appeals. He asserts error only in the true finding on the allegation he violated section 417.4.

## DISCUSSION

## I

### Interpretation of Section 417.4

Section 417.4 provides: "Every person who, except in self-defense, draws or exhibits an imitation firearm in a threatening manner against another in such a way as to cause a reasonable person apprehension or fear of bodily harm is guilty of a misdemeanor . . . ." The phrase "*draws or exhibits an imitation firearm in a threatening manner against another in such a way as to cause a reasonable person apprehension or fear of bodily harm*" can be interpreted two ways. As the minor asserts, under one interpretation, the statute could apply to those situations where the perpetrator draws or exhibits an imitation firearm against another person in a threatening manner and this display causes the person against whom the imitation firearm is drawn or exhibited to experience reasonable apprehension or fear of bodily harm. Alternatively, the phrase could apply to situations in which the

perpetrator displays or exhibits an imitation firearm against another with the result that any reasonable person witnessing the event, even a reasonable bystander, experiences apprehension or fear of bodily harm.

■ "In interpreting a statute where the language is clear, courts must follow its plain meaning. [Citation.] However, if the statutory language permits more than one reasonable interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute. [Citation.] In the end, we ' "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]" (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57].)

*Legislative History*

■ The legislative history of section 417.4 reveals the policy concerns of the enacting Legislature. This historical context shows the Legislature intended to proscribe drawing or exhibiting an imitation firearm in a way that causes any reasonable person, even a reasonable bystander, to experience apprehension or fear of bodily harm.

The provision that later became section 417.4 was enacted in 1987 as section 417.2, subdivision (a). (Stats. 1987, ch. 597, § 1, p. 1921.) It stated: "Every person who, except in self-defense, draws or exhibits a replica of a firearm in a threatening manner against another in such a way as to cause a reasonable person apprehension or fear of bodily harm is guilty of a misdemeanor." (*Ibid.*) Subdivision (b) of former section 417.2 defined "replica of a firearm" as "any device with the apparent capability of expelling a projectile by the force of air or an explosion and which is reasonably perceived by the person against whom the device is drawn or exhibited to be an actual firearm, including starter pistols and air guns." Thus, to violate former section 417.2, the perpetrator had to draw or exhibit against another a device with the apparent capability of expelling a projectile *and* the person against whom the object was drawn had to perceive the device to be an actual firearm.

In 1993, the Legislature moved the provision from section 417.2 to section 417.4. In doing so, the Legislature changed the term "replica of a firearm" to "imitation firearm," with a different definition. An "imitation firearm" is a "replica of a firearm," which term is no longer defined in the code, "that is

so substantially similar in physical properties to an existing firearm as to lead a reasonable person to conclude that the replica is a firearm." (§ 417.4.) Consequently, the prohibited device is no longer defined in terms of what the person against whom the device is drawn reasonably perceives it to be. Instead, it is defined in terms of what a reasonable person would conclude. The amendment did not speak to the ambiguity, noted above, concerning who must experience apprehension or fear of bodily harm. That language remained the same. However, the Legislature's change concerning how the device is defined indicates that the perception of the person against whom the device is drawn is not the only relevant consideration in determining whether a violation of section 417.4 has occurred.

The legislative record suggests former section 417.2 and current section 417.4 were never intended to be limited to situations in which the person against whom the device was drawn experienced apprehension or fear of bodily harm. In early support of Assembly Bill No. 295 (1987-1988 Reg. Sess.), the bill that resulted in former section 417.2, the Los Angeles Unified School District stated: "At this time the need exists to address the ever-increasing problem of individuals brandishing replicas of firearms in a threatening manner against individuals or peace officers. As reported by the news media in recent months, general law enforcement officers have shot, wounded, and even killed persons who displayed look-alike weapons in a threatening manner." (Los Angeles Unified Sch. Dist., statement regarding Assem. Bill No. 295 (1987-1988 Reg. Sess.) June 30, 1987.) The district continued: "AB 295 addresses the problem of replica weapons by categorizing the brandishing of these replicas within the same Penal Code provisions that apply to flaunting an actual firearm. This measure would impose a misdemeanor penalty on a replica weapon being drawn on a private citizen or a police officer." (*Ibid.*) A July 1987 report of the Senate Judiciary Committee stated that "although firearm replicas are not deadly weapons, they can in certain circumstances act as a catalyst to increased danger and violence." (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 295 (1987-1988 Reg. Sess.) as amended July 8, 1987, p. 1.) The report cited the letter from the Los Angeles Unified School District for instances in which a person was wounded as a result of carrying or possessing a gun replica. (*Ibid.*)

This history shows the Legislature, in 1987, was concerned by more than the apprehension or fear of the person against whom the imitation firearm was drawn or exhibited. Experience demonstrated that drawing or exhibiting an imitation firearm could cause apprehension or fear and, as a result, violence on the part of anyone who witnessed the act and felt compelled to react.

This concern was reiterated in 1993, when the Legislature moved the provision from former section 417.2 to section 417.4 and made the changes concerning the definition of the device drawn or exhibited against another. A committee analysis stated: "During the 1987-1988 Session, the Legislature undertook an effort to limit the presence of imitation firearms on the streets and in the neighborhoods of California. This was done in response to a number of tragic incidents where the imitation was mistaken as an actual firearm by police or *alarmed bystanders*; death and injury ensued." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 292 (1993-1994 Reg. Sess.) as amended Apr. 29, 1993, italics added.) While the Legislature has no authority to interpret a previously enacted statute, we take cognizance of subsequent declarations of legislative intent if the declaration is consistent with the original intent. (*Del Costello v. State of California* (1982) 135 Cal.App.3d 887, 893, fn. 8 [185 Cal.Rptr. 582].)

 Therefore, the term "reasonable person" in the phrase "draws or exhibits an imitation firearm in a threatening manner against another in such a way as to cause a reasonable person apprehension or fear of bodily harm" refers to anyone who witnesses the actions of the perpetrator, not just to the person against whom the device is drawn or exhibited. If we were to adopt the minor's suggested interpretation of the statute, a violation would occur only if the person against whom the device was drawn or exhibited experienced apprehension or fear, regardless of how likely it was that a bystander might see the action of the perpetrator and react with injurious, or even deadly, force. This suggested interpretation does not faithfully implement the public policy the Legislature had in mind when it enacted the provision. Accordingly, we conclude the broader interpretation is more consistent with legislative intent.

*Related Statute*

Section 417, subdivision (a)(2) proscribes drawing or exhibiting an actual firearm in a threatening manner "in the presence of any other person."[1] In *People v. McKinzie* (1986) 179 Cal.App.3d 789 [224 Cal.Rptr. 891], the court found that under section 417, subdivision (a)(2), it was unnecessary for the victim of the brandishing, the person against whom the firearm was drawn or exhibited, to be aware of it. Instead, the crime is complete on drawing or exhibition of the weapon in a threatening manner. The court reasoned: "For purposes of the conduct which the statute is meant to deter, it

---

[1]Section 417, subdivision (a)(2) states: "Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, in a rude, angry, or threatening manner, or who in any manner, unlawfully uses a firearm in any fight or quarrel is punishable . . . ."

is enough that the brandishing be in public, in the presence of the victim, where *some third party happening along might get the idea* that either the victim or brandisher need help, *or might think* a brawl is in the making which he might join. The thrust of the offense is to deter the public exhibition of weapons in a context of potentially volatile confrontations. The victim's unawareness of the weapon does little to mitigate the danger inherent in such situations." (*McKinzie*, at p. 794, italics added.)

■ "Where a statute referring to one subject contains a critical word or phrase, omission of that word or phrase from a similar statute on the same subject generally shows a different legislative intent." (*Craven v. Crout* (1985) 163 Cal.App.3d 779, 783 [209 Cal.Rptr. 649].) ■ The minor argues that, since the *McKinzie* court interpreted "in the presence of any other person" to mean that a perpetrator violates section 417, subdivision (a)(2), even if only a bystander sees the firearm, the Legislature would have used the same language in section 417.4 if it intended to extend the perpetrator's criminal liability to a case in which a bystander, but not the person against whom the imitation firearm was drawn or exhibited, experienced fear or apprehension. We disagree.

Subdivision (a)(2) of section 417 proscribes public brandishing, generally, of an actual firearm. It is violated when the perpetrator brandishes the weapon in a threatening manner, even if the person being threatened did not see it. Section 417.4, on the other hand, does not simply proscribe public brandishing of an imitation firearm. It proscribes drawing or exhibiting an imitation firearm "against another," with the additional requirement that it cause a reasonable person to experience fear or apprehension of bodily harm. These are two differently worded statutes covering dissimilar situations, and it is unremarkable that the language employed by the Legislature is markedly different. In section 417.4, the Legislature required that a person not only know about the perpetrator's actions but also that the person have a specific reaction. Section 417, subdivision (a)(2) makes presence of another person, even without that person's knowledge of the perpetrator's action, an element of the offense—thus, the language "in the presence of any other person." That language, however, does not properly describe the elements of section 417.4, which include not only the presence of another person against whom the imitation firearm is displayed or exhibited, but also some person's knowledge of, and a reaction to, the perpetrator's action. Therefore, we conclude the Legislature's use of "in the presence of any other person" in section 417, subdivision (a)(2) does not preclude interpretation of section 417.4, which does not include that language, to mean that a bystander, not just the victim, can be the one to experience apprehension or fear.

*Application of Section 417.4*

█ The minor contends if we interpret section 417.4 to cover situations where a bystander has apprehension or fear for the safety of *another person* this would · lead to an absurd result because it would sweep in innocent conduct. The minor proposes that under this interpretation of the statute, children playing in the streets with toy guns could be found misdemeanants if a bystander feared for the safety of one of the children.

This argument fails because of two safeguards built into the statute. First, this section is not applicable unless, under the circumstances, a *reasonable person* would experience apprehension or fear of bodily safety. And second, the section only applies where the imitation firearm "is so substantially similar in physical properties to an existing firearm as to lead a reasonable person to conclude that the replica is a firearm." (§ 417.4.) Section 417.2 imposes civil fines for the sale, manufacture or distribution of weapons that are substantially similar to actual firearms. So it is unlikely that a child will have access to the type of weapon that would qualify as an imitation firearm under section 417.4.

*Rule of Lenity*

Finally, the minor asserts that if a penal statute is ambiguous the court must construe the statute in favor of the minor. To support this assertion, the minor cites to *People v. Fenton* (1993) 20 Cal.App.4th 965 [25 Cal.Rptr.2d 52]. In *Fenton*, this court recognized under the rule of lenity that California will " 'construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit . . . .' " (*Id.* at p. 968, citing *Keeler v. Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) █ However, application of the rule of lenity is inappropriate unless, after consideration of the intent of the statute, the canons of statutory construction, and an analysis of the legislative history, the statute is still ambiguous. (*United States v. R. L. C.* (1992) 503 U.S. 291, 305-306 [112 S.Ct. 1329, 1338-1339, 117 L.Ed.2d 559, 572].) Because we conclude the ambiguity in the statute is resolved by applying standard aids to statutory interpretation, the rule of lenity has no application.

II

*Substantial Evidence*

█ On appeal, we examine the whole record in the light most favorable to the judgment below to determine whether it contains substantial evidence.

(*People v. Johnson* (1980) 26 Cal.3d 557, 561 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. (*In re James D.* (1981) 116 Cal.App.3d 810, 813 [172 Cal.Rptr. 321].)

The minor contends we must determine whether the evidence supports an inference he "knew or should have known he was displaying the object before others in a manner likely to engender fear of bodily harm." This statement of the law is incorrect. ■ Section 417.4 creates a general intent crime, and the crime is complete when the perpetrator draws or exhibits an imitation firearm against another in such a way as to cause a reasonable person apprehension or fear of bodily harm. Because there is no specific intent element, the prosecution need not prove the minor knew or should have known he was displaying the imitation weapon in a manner likely to cause another to experience apprehension or fear of bodily harm.

■ The substantial evidence question in this case is whether there was enough reasonable, credible evidence to support the conclusion that a reasonable person in Russell's position would have felt apprehension or fear of bodily harm. The minor "readily concedes" Russell's "sighting of the imitation gun would cause her to reasonably fear for her safety and for the safety of others at the school." He therefore concedes the record contains substantial evidence to support the trial court's finding that a reasonable person would fear for his or her own safety or the safety of others at the school.

The record supports the minor's concession. Russell saw three teenage boys on a school campus, one of whom was pointing what appeared to be a handgun at another, smaller boy. She testified that the smaller boy was ducking and had an odd expression on his face—like he was pleading not to be shot. Seeing the object in the minor's hand made Russell "drop" to the floor. She then moved away from the window and disrupted the entire faculty and student body when she proceeded to "lock down the school"—which is normally done only in "unsafe situations." It is reasonable for a person who sees a teenage boy with what appears to be a firearm on school grounds immediately to fear for his or her own safety and the safety of the faculty and children at the school.

Some evidence on the record suggests it was not reasonable for Russell to feel apprehension or fear. For example, there was evidence the minor and another boy were laughing. If found true by the trier of fact, this evidence may have suggested Russell should have known she had no reason to fear. However, our role as an appellate court is not to make new findings of facts or second-guess the trier of fact. We only determine whether there is

substantial evidence supporting the conclusion of the trier of fact. Here, there was sufficient evidence on which to conclude that the minor violated section 417.4.

## III

### *Variance*

When the petition was amended on the prosecutor's motion to allege a violation of section 417.4, handwriting was added to the petition which read, when combined with the printed part: "On or about January 25, 2000, minor . . . did commit a misdemeanor namely: violation of Section 417.4 of the Penal Code of the State of California, in that said minor was a person who, not in self-defense, against another person, to wit, Kathy Russell, did unlawfully draw and exhibit a replica firearm in a threatening manner in such a way as to cause a reasonable person apprehension and fear of bodily harm." (Unnecessary underscoring and capitalization omitted.)

After citing cases concerning the standard of review for sufficiency of the evidence in a criminal proceeding, the minor asserts the order must be reversed because the evidence did not show he drew the imitation firearm against Kathy Russell, as alleged in the petition. This argument is without merit for two reasons. First, as we will explain, we do not measure the sufficiency of the evidence against the allegations of the petition. We measure the sufficiency of the evidence against the penal statute. And second, the minor provides no authority that a variance between the evidence presented at the jurisdictional hearing and the allegations of the petition constitutes reversible error. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481] [failure to cite authority waives appellate review of issue].)

Each of the authorities cited by the minor is a case in which the conduct is measured against the statute to determine whether there was a violation of the statute. (See, e.g., *People v. Barnes* (1986) 42 Cal.3d 284, 304 [228 Cal.Rptr. 228, 721 P.2d 110] [conduct constituted rape under statute].) The cases cited by the minor do not state that a reviewing court must determine whether the substantial evidence supports a conclusion that the defendant committed the acts alleged in the information or other charging document. Indeed, that is not the law. The charging document provides notice to the accused. As long as it serves that purpose, it is adequate. (See § 952; *People v. Silva* (2001) 25 Cal.4th 345, 367 [106 Cal.Rptr.2d 93, 21 P.3d 769].) The same is true with a petition in a delinquency proceeding. (See *In re Jesse P.* (1992) 3 Cal.App.4th 1177, 1181-1182 [5 Cal.Rptr.2d 321].)

 "Under the generally accepted rule in criminal law a variance is not regarded as material unless it is of such a substantive character as to mislead the accused in preparing his defense, or is likely to place him in second jeopardy for the same offense." (*People v. Williams* (1945) 27 Cal.2d 220, 226 [163 P.2d 692].) The minor made no argument in the trial court and does not contend here that the petition did not adequately put him on notice of the charges against him. He merely claims the evidence does not match the allegations of the petition because he pointed the imitation firearm at Andre A., not Kathy Russell. Since the minor, in effect, concedes he had adequate notice of the charges against him, the variance between the petition and the evidence is inconsequential.

DISPOSITION

The order sustaining the petition is affirmed.

Scotland, P. J., and Morrison, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 25, 2002.