Filed 4/28/14  P. v. Gomez-Villeda CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064112 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD235999) |
| ELAINA EUGENIA GOMEZ-VILLEDA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Albert T. Harutunian, III, Judge.  Affirmed.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for the Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Julie L. Garland, Assistant Attorneys General, Scott C. Taylor, Parag Agrawal, Deputy Attorneys General for the Plaintiff and Respondent.

A jury convicted Elaina Eugenia Gomez-Villeda of making a criminal threat (Pen. Code,[1] § 422; count 1) and assault with a firearm (§ 245, subd. (a)(2); count 2). It found true allegations that defendant personally used a firearm in the commission of count 1 within the meaning of sections 12022.5, subdivision (a) and 1192.7, subdivision (c)(23). The trial court suspended imposition of sentence and placed defendant on three years of formal probation and ordered her to pay various fines and fees. Defendant contends the evidence does not establish she made a criminal threat within the meaning of section 422. She further contends the trial court prejudicially erred by failing to instruct the jury on count 2 on brandishing a firearm as defined in section 417, subdivision (a)(2). We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of August 16, 2011, Carmen Ruiz and her then three-year-old daughter visited Ruiz's friend, Maria Garcia, who lived on Fairmont Avenue in San Diego. Ruiz and Garcia had been friends for eight years but Ruiz had only been to Garcia's house four or five times. Ruiz parked her car in Garcia's parking area, close to the back door of Garcia's house. After another friend of Ruiz's, Maria Anguiano, arrived, Ruiz and Anguiano left in Anguiano's car for about 45 minutes to run an errand. When Ruiz and Anguiano returned, they walked from the alley into the parking area toward the back door. As they approached Garcia's door, they saw defendant and her two children. Ruiz had never spoken with defendant before.

---

[1] All statutory references are to the Penal Code.

2

After Ruiz entered Garcia's home, Garcia and Garcia's sister in law, Cynthia Ornelas, told Ruiz that defendant had called a tow truck to tow Ruiz's car, but the tow truck did not take it because it was parked in Garcia's spot. Garcia and Ornelas appeared angry and had argued with defendant over the parking spot. Ruiz got her car keys and went outside to move her car, followed by Anguiano, Garcia, Ruiz's daughter, and Ornelas.

Ruiz got to her car and opened the door when defendant approached her, pointing a black gun at her. Defendant put the gun to the side of Ruiz's head and said in a very angry tone, "I'm not playing, I'm not fucking joking."[2] Ruiz was very afraid. She thought defendant was actually going to kill her because defendant was serious, and very upset and angry. Ruiz believed defendant had the ability to shoot her, and behaved as though the gun was working. She estimated that defendant held the gun to her head for about a minute, which to her felt like a long time. Ornelas estimated the incident took close to one minute. Ruiz understood defendant to be demanding that she move her car, because Garcia had already told Ruiz that she and defendant had argued about the problem. Still yelling, defendant turned around and returned to her house. Thankful that she was not shot, Ruiz eventually moved her car after defendant returned to her house. Ruiz parked and returned to the front of Garcia's house to pick up her daughter. Ruiz was

---

[2] On cross-examination Ruiz said defendant said something like, "What the fuck do you think, I'm not joking." Ornelas testified that defendant said, "Move your fucking car, do you think I'm fucking playing with you."

afraid for a "long time" after the day ended; she became depressed and returned to Mexico because she was afraid that something would be done to her or her daughter.

Silvia Vasquez, the office manager for the company managing the apartment complex, testified that on August 1, 2011, defendant sent her an email complaining about her neighbor, and telling her they had been hoarding trash, not cleaning up after their animals, and having a large number of people coming in and out of their unit at all hours of the night. She wrote that the police had been called, but did not show up in time and considered it low priority. The last line of defendant's email read: "I am trying to take the responsible approach on this instead of getting ghetto and really causing a problem. I am not really sure what to do." Vasquez had received earlier complaints from defendant about her neighbors keeping outside lights on unnecessarily and leaving trash outside their unit. In response, Vasquez instructed defendant to continue to call police, and the management company had sent her neighbor a notice. Vasquez testified that on the day of the incident defendant had phoned her to complain that the driveway was being blocked by another vehicle so nobody could get in or out.

Police officers responding to the August 16 incident searched defendant's home and found a live bullet for a .32-caliber revolver, a trigger lock in two pieces, and a gun pouch of a size consistent with a .32-caliber gun. They did not locate any firearms in her house.

Defendant claimed that when she told Ruiz to move her car, she was only holding her car keys and cell phone. She denied having or owning a gun, and denied having any

4

weapon or gun at any time that day.  Defendant denied threatening to do bodily harm to anyone, or to Ruiz specifically, on the day of the incident.

## DISCUSSION

I. *Sufficiency of the Evidence to Support Conviction for Making a Criminal Threat*

Defendant contends the evidence is insufficient to establish she made a criminal threat within the meaning of section 422.  Specifically, she maintains there was no evidence of any threat and though she was angry, after the incident she turned and walked back to her apartment.  She also argues the evidence does not show Ruiz was in a sustained period of fear within the meaning of the statute.  Defendant argues her comments, taken in context, suggest only a verbal outburst and not a serious, deliberate statement of purpose to inflict pain or physical injury on Ruiz.  Further, defendant asserts the evidence does not show Ruiz was reasonably in sustained fear for her own safety that was more than momentary, fleeting or transitory.

A. *Standard of Review*

" 'A reviewing court faced with [a claim challenging the sufficiency of the evidence] determines "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citations.]  We examine the record to determine "whether it shows evidence that is reasonable, credible and of solid value from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]  Further, "the appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citation.]

5

This standard applies whether direct or circumstantial evidence is involved. "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court[,] that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " ' " (*People v. Virgil* (2011) 51 Cal.4th 1210, 1263.)

B. *Elements of Offense*

There are five elements to a section 422 offense of making a criminal threat. (*In re George T.* (2004) 33 Cal.4th 620, 630.) The People must prove: " '(1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the defendant made the threat "with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat . . . was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.' " (*In re George T.*, at p. 630, fn. omitted.)

6

C. *Defendant's Statement was a Threat within the Meaning of Section 422*

In *In re George T.*, *supra*, 33 Cal.4th at page 635, the court explained: "With respect to the requirement that a threat be 'so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat,' we explained . . . that the word 'so' in section 422 meant that ' "unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances . . . ." ' [Citations.] 'The four qualities are simply the factors to be considered in determining whether a threat, considered together with its surrounding circumstances, conveys those impressions to the victim.' [Citation.] A communication that is ambiguous on its face may nonetheless be found to be a criminal threat if the surrounding circumstances clarify the communication's meaning." Thus, a " 'threat is not insufficient simply because it does "not communicate a time or precise manner of execution, section 422 does not require those details to be expressed." ' " (*People v. Wilson* (2010) 186 Cal.App.4th 789, 806.) " 'While the statute does not require that the violator intend to cause death or serious bodily injury to the victim, not all serious injuries are suffered to the body. The knowing infliction of mental terror is equally deserving of moral condemnation.' " (*Ibid.*)

Here, viewing the entire incident in context, a reasonable trier of fact could find a sufficient threat from the evidence of defendant's angry approach with gun raised and leveled at Ruiz's head. Though defendant did not expressly threaten bodily harm, her use of the gun while yelling at Ruiz that she was "not playing" and "not fucking joking,"

7

constituted a threat under circumstances that conveyed a gravity of purpose and an immediate prospect of execution. And, contrary to other cases in which gravity of purpose was not found (see *In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1138 (*Ricky T.*)), defendant's angry words were accompanied by a show of physical violence. A rational trier could have found that defendant expressed her intention to hurt Ruiz if Ruiz did not immediately move her vehicle. A rational trier could have further concluded that by pointing the gun and holding it at Ruiz's temple, defendant expressed a gravity of purpose and an immediate prospect of execution of the threat.

In view of these circumstances, we do not accept defendant's characterization of her words as merely "suggest[ing] an angry outburst and nothing more." And, though defendant claims she "immediately" turned and walked away, the evidence does not necessarily support that proposition; Ruiz testified that at some point when she had started to get into the driver's seat, defendant turned around to go back to her house, still yelling. In sum, the evidence amply supports the jury's finding that defendant made a threat within the meaning of section 422.

D. *The Evidence is Sufficient to Show Ruiz was Reasonably in Sustained Fear*

The sustained fear element "requires proof of a mental element in the victim." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) "The phrase to 'cause[ ] that person reasonably to be in sustained fear for his or her own safety' has a subjective and an objective component. A victim must actually be in sustained fear, and the sustained fear must also be reasonable under the circumstances." (*Ricky T.*, *supra*, 87 Cal.App.4th at pp. 1139-1140.) "[S]ection 422 requires that the communication must be sufficient 'on its

8

face and under the circumstances in which it is made' to constitute a criminal threat. This means that the communication and the surrounding circumstances are to be considered together." (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 860.)

Though neither section 422 nor case law has identified any particular length of time for a finding of sustained fear, "sustained" as used in the statute has been described to mean "a period of time that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen*, *supra*, 33 Cal.App.4th at p. 1156 & fn. 6 ["[N]o minimum time period is required, only a period 'not insubstantial' "]; *Ricky T.*, *supra*, 87 Cal.App.4th at pp. 1139-1140.) Thus, not any experience of fear will suffice to meet the standard. (*Id*. at p. 1140 ["Clearly, if any experience of fear constitutes a 'sustained' experience, then the term is superfluous."].) In *Allen*, the appellate court held the evidence was "more than sufficient" to support a finding of sustained fear for purposes of section 422 where the defendant was "armed, mobile, and at large" for a sustained period of 15 minutes after he had threatened to kill the victim and her daughter, against whom he had a long history of stalking and domestic violence. (*Allen*, at pp. 1151-1156.) The court found the victim's knowledge of the defendant's prior conduct was relevant to establish the victim was in a state of sustained fear. (*Id*. at p. 1156.)

In *People v. Fierro* (2010) 180 Cal.App.4th 1342 (*Fierro*), the victim and his son were at a gas station when they got into an altercation with the defendant, whom they had never previously met. (*Id*. at p. 1344.) The defendant appeared to drive off, but then circled back around. (*Id*. at p. 1345.) The victim attempted to leave the premises, but before he could, the defendant confronted him and his son in their car, displayed a

9

weapon in his waistband to them while yelling obscenities, and threatened to kill them. (*Id*. at pp. 1345-1346.) This second encounter lasted about a minute, and the threat itself lasted about 40 seconds. (*Id*. at p. 1349 & fn. 5.) When the victim was finally able to drive away and onto the freeway, he called the police, still scared. (*Id*. at p. 1346.)

*Fierro* summarized the victim's testimony of his fear: "Mr. Ibarra testified clearly and more than once that he was horribly scared, and his fright was not fleeting. Regardless of who was at fault during the first confrontation, it had ended. Appellant had driven away. But then appellant circled and returned with the obvious intent of confronting Ibarra again and, this time, frightening him. In light of the (albeit recent) history between these people, appellant amply succeeded. Facing what he thought was a gun and hearing words to the effect that he and his son were about to be killed, Mr. Ibarra was in sustained fear for his and his son's life. The fear lasted not only through the minute or so that appellant stood there exposing his weapon, but for up to fifteen minutes after Ibarra drove away. It is entirely reasonable that he would react as he did for as long as he did. That is exactly what appellant wanted to accomplish." (*Fierro*, *supra*, 180 Cal.App.4th at p. 1349.) The *Fierro* court concluded that under the circumstances the victim's fear was not momentary, and thus there was substantial evidence to support the section 422 offense. (*Ibid*.)

*Fierro* contrasted the facts of *Ricky T*., *supra*, 87 Cal.App.4th 1132, in which the reviewing court concluded a teacher's fear was fleeting and insufficient to support a section 422 offense. (*Fierro*, *supra*, 180 Cal.App.4th at p. 1349, citing *Ricky T*., at pp. 1135-1136.) In *Ricky T*., a 16-year-old student left a classroom to use the bathroom and

10

found the classroom door locked upon his return. He pounded on the door and when the teacher opened it, the door accidentally hit the student. The student became angry, cursed the teacher and threatened to "get" him and stated he was going to "kick [his] ass," but made no physical movements or gestures. The teacher felt threatened and responded by sending the student to the school office. (*Ricky T.*, at pp. 1135-1136.) The Court of Appeal held the teacher's fear insufficient in the absence of evidence showing he felt fear beyond the moment of the angry utterances. (*Id.* at p. 1140.) It observed the police were not called until the next day, there was no history of disagreements between the student and the teacher, and there was no accompanying show of force or violence. (*Id.* at pp. 1138, 1140.) Indeed, the student complied with the teacher's demand by leaving the scene and going to the school office. The court concluded that the student's "statement was an emotional response to an accident rather than a death threat that induced sustained fear." (*Id.* at p. 1141.)

The facts here are more like those in *Fierro supra*, 180 Cal.App.4th 1342 than in *Ricky T.*, *supra*, 87 Cal.App.4th 1132, and compel us to uphold the jury's finding as supported by substantial evidence. Ruiz testified that she was very afraid and thought defendant was going to kill her during the time that defendant held the gun to her head, which she testified was close to a minute. Ruiz then moved her car but was forced to return to get her daughter, and she testified she was afraid for a long time beyond the day of the incident; that "until now that day had its consequences" causing her to leave the United States and return to Mexico. It is not for us to question Ruiz's credibility, as that is a jury question. Though Ruiz and defendant had no prior history, defendant did live

11

next door to Ruiz's good friend.  But the absence of a prior relationship, in our view, is not dispositive in view of Ruiz's testimony, which establishes her fear was more than fleeting or transitory.  Under the circumstances, it was objectively reasonable for a person in Ruiz's situation to be in fear for her own personal safety both during and after the incident, more than for a period that is merely fleeting or limited to the moments of the encounter.  A reasonable jury could find Ruiz reasonably suffered the kind of sustained fear sufficient to convict defendant of a criminal threat within the meaning of section 422.

## II. *Claim of Failure to Instruct on Lesser Included Offense*

Defendant contends the trial court prejudicially erred by denying her request to instruct the jury on brandishing a firearm as a lesser included offense of assault with a firearm.  She argues the issue was addressed by *People v. Wilson* (1967) 66 Cal.2d 749 and *People v. Coffey* (1967) 67 Cal.2d 204 (*Coffey*)[3], as well as in *People v. McKinzie* (1986) 179 Cal.App.3d 789, whose holdings have assertedly been ignored or contradicted by other courts, including *People v. Steele* (2000) 83 Cal.App.4th 212.  According to defendant, the holding in *McKinzie* was approved by the California Supreme Court in *People v. Booker* (2011) 51 Cal.4th 141, suggesting *Steele* was wrongly decided.

---

[3]    Disapproved on another point in *People v. Colantuano* (1994) 7 Cal.4th 206, 218, fn. 8.  The court in *People v. Escarcega* (1974) 43 Cal.App.3d 391, 400 examined *Coffey*, *supra*, 67 Cal.2d 204 and concluded its statement on the lesser included offense issue was dictum and without precedential value as it was not responsive to any issue raised and unnecessary to the decision.  (*Escarcega*, at p. 400.)  We agree.

Defendant maintains the error deprived her of her federal and state constitutional rights and constitutes prejudicial error under *Chapman v. California* (1967) 386 U.S. 18.

A.  *Legal Principles*

The trial court has a sua sponte obligation to instruct on a lesser included offense when there is substantial evidence from which a reasonable jury could conclude the defendant committed the lesser, but not the greater, offense.  (*People v. Breverman* (1998) 19 Cal.4th 142, 162.)  Two tests are used to determine whether an offense is a lesser included offense: the statutory elements test or the accusatory pleading test.  (*People v. Ramirez* (2009) 45 Cal.4th 980, 984-985; *People v. Licas* (2007) 41 Cal.4th 362, 366; *People v. Lopez* (1998) 19 Cal.4th 282, 288.)  The statutory elements test is satisfied when " ' "all the legal ingredients of the corpus delicti of the lesser offense [are] included in the elements of the greater offense." ' "  (*Lopez*, at p. 288.)  Thus, "if a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former."  (*Ibid*.; see *People v. Birks* (1998) 19 Cal.4th 108, 117.)  Under the statutory elements test, the characterization of an offense as a lesser included offense is made solely with reference to the elements of that offense; "[t]he evidence actually introduced at trial is irrelevant . . . ."  (*People v. Wright* (1996) 52 Cal.App.4th 203, 208; see also *People v. Escarcega*, *supra*, 43 Cal.App.3d at p. 396.)  The accusatory pleading test is met " ' "if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." ' "  (*Lopez*, at pp. 288-289.)

13

The duty to instruct on a lesser included offense attaches only if the evidence would allow a reasonable jury to convict on the lesser included offense *instead of* the greater offense. (*People v. Breverman*, *supra*, 19 Cal.4th at p. 162.) That is, the "trial court need not . . . instruct on lesser included offenses when the evidence shows that the defendant is either guilty of the crime charged or not guilty of any crime." (*People v. Barton* (1995) 12 Cal.4th 186, 196, fn. 5.)

B. *The Court Did Not Err in Declining to Instruct on Brandishing a Firearm Because Brandishing is Not a Lesser Included Offense of Assault with a Firearm*

In *People v. Steele*, *supra*, 83 Cal.App.4th 212, the appellate court rejected the defendant's argument that brandishing a firearm in violation of section 417, subdivision (a)(2) was a lesser included offense of assault with a firearm, holding instead in accord with numerous authorities that brandishing under that section is a lesser *related* offense of assault with a firearm. (*People v. Steele*, at pp. 217-218 [citing cases].) Relying on *People v. Escarcega*, *supra*, 43 Cal.App.3d 391, the court reasoned it is "theoretically possible to assault someone with a firearm without exhibiting the firearm in a rude, angry or threatening manner, e.g., firing or pointing it from concealment, or behind the victim's back." (*People v. Steele*, at pp. 217-218.) *Steele* stated that the California Supreme Court had only implied in *People v. Wilson*, *supra*, 66 Cal.2d 749 that brandishing was a lesser included offense of assault, it did not directly so hold, and its statement had no prior case support and only scant subsequent support. (*People v. Steele*, at p. 219.) Further, *Steele* observed that the court in *Wilson* did not follow its own rule for analysis of lesser

included offenses, which has continued unabated and was affirmed in *People v. Birks*. (*People v. Steele*, at p 221, citing *People v. Birks*, *supra*, 19 Cal.4th at p. 117.)

When we apply the statutory elements test in keeping with *People v. Birks*, *supra*, 19 Cal.4th 108, we can only conclude that brandishing cannot be a lesser included offense of assault with a firearm. "Section 245, subdivision (a)(2) punishes '[a]ny person who commits an assault upon the person of another with a firearm.' Assault is defined as 'an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.' [Citation.] 'Once a defendant has attained the means and location to strike immediately he has the "present ability to injure." ' " (*People v. Licas*, *supra*, 41 Cal.4th at pp. 366-367, italics omitted.) The offense of brandishing a firearm is defined as exhibiting "any firearm, whether loaded or unloaded, in a rude, angry, or threatening manner" in the "presence of any other person." (§ 417, subd. (a)(2).) Assault with a firearm does not require the defendant to display the weapon in a rude, angry, or threatening manner, as *Steele* points out. (*People v. Steele*, *supra*, 83 Cal.App.4th at pp. 217-218.) Thus, under the statutory elements test, defendant's request for a jury instruction on brandishing was properly rejected because very simply, brandishing is not a lesser included offense of the crime of assault with a firearm.

None of defendant's arguments explain how the greater crime of assault with a firearm cannot be committed without *necessarily* committing the crime of brandishing a weapon. Her argument on the point is merely that "[o]n the facts of [her] case it is clear that [she] committed a violation of Penal Code section 417." But, as stated, when determining whether one offense is a lesser included offense of another, the evidence

15

adduced at trial "is of no consequence . . . ." because we view the offenses in the abstract. (*People v. Dixon* (2007) 153 Cal.App.4th 985, 1002; *People v. Steele*, *supra*, 83 Cal.App.4th at p. 219.) Defendant further maintains *Steele* was wrongly decided. She asserts it is based on a mistaken belief that brandishing a weapon requires an awareness of the victim that the weapon has in fact been displayed. Defendant argues *People v. Wilson*, *supra*, 66 Cal.2d 749 has not been directly abrogated, and is consistent with *People v. McKinzie*, *supra*, 179 Cal.App.3d 789, which does not require such awareness. According to defendant, *McKinzie*'s holding on this point was approved recently by the court in *People v. Booker*, *supra*, 51 Cal.4th 141.

In *Booker*, the California Supreme Court quoted *McKinzie* in deciding whether the trial court had erred by admitting evidence of the defendant's uncharged violent criminal conduct, including evidence that he had displayed a knife while others fought. (*People v. Booker*, *supra*, 51 Cal.4th at p. 187.) The question there was whether the jurors were convinced beyond a reasonable doubt that the defendant had engaged in conduct involving the use or attempted use of force or violence, or express or implied threat to use force or violence. (*Ibid.*) The court observed the defendant did not dispute that he drew his knife during the fight, and explained that brandishing a weapon may be committed by drawing or exhibiting the weapon in a rude, angry, or threatening manner, and it need not be pointed at the victim to be threatening. (*People v. Booker*, *supra*, 51 Cal.4th at p. 189.) It quoted from *People v. McKinzie*, *supra*, 179 Cal.App.3d 789, in which that court stated that to establish brandishing, " '. . . it is enough that the brandishing be in public, in the presence of the victim, where some third party happening along might get the idea

16

that either the victim or brandisher need help, or might think a brawl is in the making which he might join.  The thrust of the offence is to deter the public exhibition of weapons in a context of potentially volatile confrontations.' "  (*Booker*, at p. 189.) *Booker* noted parenthetically that *McKinzie* had ruled the victim's awareness of the weapon was not required.  (*Booker*, at p. 189.)  *Booker* does not involve a question of lesser included offenses, and we do not read its observation about *McKinzie* as adopting or ratifying that decision on that point.

Because the statutory elements test is not satisfied, we turn to whether the information encompasses the crime of brandishing.  Defendant does not explain if or how the accusatory pleading describes the crime of assault with a firearm in such a way that if committed in the manner described, the lesser offense of brandishing must necessarily have been committed.  The information simply alleges defendant "did unlawfully commit an assault on . . . Ruiz with a firearm . . . ."  So worded, the allegations in this case do not encompass the crime of brandishing a firearm, and they do not transform brandishing into a lesser included offense.

DISPOSITION

The judgment is affirmed.


                                                                    O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McINTYRE, J.