Filed 10/10/14  P. v. Edwards CA5

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | F067128 |
| v. | (Super. Ct. No. F07901966) |
| SHERION NED EDWARDS, | **O P I N I O N** |
| Defendant and Appellant. | |

### THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  H. N. Papadakis, Judge.

Meredith J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Kari Ricci Mueller, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Kane, Acting P.J., Poochigian, J., and Peña, J.

Appellant, Sherion Ned Edwards, pled no contest to petty theft with priors (Pen. Code, § 666)[1] and grand theft of personal property (§ 487, subd. (a)) and admitted three prior prison term enhancements (§ 667.5, subd. (b)) and allegations that he had a prior conviction within the meaning of the three strikes law (§ 667, subds. (b)-(i)). Edwards also pled no contest to a trailing misdemeanor battery charge and he admitted that he violated probation in two separate cases.

On appeal, Edwards contends: 1) the court erred when it denied his request for a *Marsden*[2] hearing; 2) the court violated his right to equal protection by its failure to award him two-for-two presentence conduct credit; and 3) the rule of lenity required that he be awarded two-for-two presentence conduct credit. We affirm.

## FACTS

On August 31, 2011, Edwards was identified as the driver of a van that was spotted on a property from which corn hopper blades were stolen.

On September 12, 2011, Edwards took a well pump engine that had been stolen from John Torres to the SA Recycling Center. Tulare County Sheriff's deputies questioned Edwards about the engine and eventually arrested him.

On May 17, 2012, the district attorney filed an information charging Edwards with two counts of petty theft with prior convictions (counts 1 & 2), grand theft of personal property (count 3), and attempted vehicle theft (count 4/§ 664 & Veh. Code, § 10851, subd. (a)). The information also alleged three prior prison term enhancements and that Edwards had a prior conviction within the meaning of the three strikes law.

On November 20, 2012, Edwards entered his plea in this matter in exchange for a maximum prison term of four years and the dismissal of the remaining counts and the prior prison term enhancements. During the change of plea proceedings, Edwards asked

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

[2]     *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

2

the court if he would receive 20 percent conduct credit and was erroneously informed that he would receive only 15 percent conduct credit.[3]  Edwards replied that he would accept the deal even if he received only 15 percent conduct credit.

*Sentencing*

On March 11, 2013, the court sentenced Edwards to the middle term of four years on his petty theft with prior convictions, the middle term of two years doubled to four years because of Edwards's prior strike conviction, and a concurrent doubled middle term of four years on his grand theft conviction.  In each case, the court awarded Edwards 817 days of presentence custody credit consisting of 545 days of presentence actual custody credit and 272 days of presentence conduct credit.

After the court finished pronouncing sentence on the above two counts, Edwards asked if the 545 days of presentence actual custody credit would "double."  The court and defense counsel responded that he received one-third credit (two-for-four) and that he would receive a total of 817 days of presentence custody credit.  Edwards stated he did not "plead" to that and was told that he would be getting "half time" (one-for-one) credit. He also told the court several times that he wanted a *Marsden* hearing.  The court then told Edwards that according to the latest appellate court decision, "offenses [that are committed] prior to the 1st of October, 2011, don't get half time" to which Edwards replied:

> "I understand that, but that is not my *Marsden* hearing.  My *Marsden* hearing is that I'm paying restitution for a crime -- I'm paying -- well, can we go into chambers or do I got to talk out here?  I could talk out here."

---

**3**     Edwards's strike conviction limited him to earning 20 percent postsentence conduct credit, i.e., conduct credit that did "not exceed one-fifth of the total term of imprisonment."  (§ 667, subd. (c)(5); *People v. Hill* (1995) 37 Cal.App.4th 220, 224.) Since none of his current offenses were violent felonies, he was not limited to earning only 15 percent conduct credit (§ 2933.1).

When the court asked Edwards if he was talking about restitution or credits, Edwards said he was talking about both. He then complained that he had been required to plead to count 2, which had been dismissed at the preliminary hearing. Following more discussion, Edwards complained that he was required to pay restitution for the dismissed count 2. The prosecutor then explained that Edwards's allegations were not true because although the original count 2 had been dismissed, the remaining counts had been renumbered.

Some discussion then ensued regarding whether Edwards had a second strike conviction that had not been alleged in the information after which Edwards asked for a *Morrissey*[4] hearing. The court responded that he should talk to his parole officer. Edwards then stated:

> "*Marsden*. In fact -- I mean, in fact, I might even be incompetent. I got mental health papers here, as well, 'cause I don't understand nothing that's going on right now. I misunderstand everything."

Edwards also contended that his plea agreement provided he would get half-time credit and that defense counsel had told him that right before the court began pronouncing sentence.

After the court discussed sentencing on three unrelated misdemeanor charges, the court asked Edwards if he was ready to be sentenced. Edwards replied that he wanted a *Marsden* hearing because he did not understand what was going on. Edwards again complained that defense counsel told him something totally different and he asked to see a psychiatrist. The court, in pertinent part, responded that defense counsel got him a deal for four years in prison and that all the misdemeanors would run concurrent. Edwards denied being informed of that and claimed he was told something different.

---

**4**      *Morrissey v. Brewer* (1972) 408 U.S. 471.

The court then announced it was going to appoint another attorney to review the matter to see if Edwards had grounds for withdrawing his plea. The court also obtained a time waiver from Edwards and continued the hearing to another day. However, after a recess, the court reconvened Edwards's sentencing hearing without having appointed substitute counsel and finished sentencing him. In pertinent part, the court stated that it found the credits to be appropriate, sentenced Edwards to time served on a trailing misdemeanor case, and terminated his probation in two other misdemeanor cases. The court, however, did not conduct a *Marsden* hearing.

## DISCUSSION

### *The Marsden Issue*

It is well established that a defendant "may be entitled to an order substituting appointed counsel if he shows that, in its absence, his Sixth Amendment right to the assistance of counsel would be denied or substantially impaired." (*People v. Berryman* (1993) 6 Cal.4th 1048, 1070, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.) Under *Marsden*, when a defendant seeks to substitute appointed counsel based on a claim of inadequate representation, the trial court must afford the defendant an opportunity to articulate the basis for the request and to relate specific instances of counsel's deficient performance. (*Marsden*, *supra*, 2 Cal.3d at pp. 123-124.) A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that the defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation likely will result. (*People v. Crandell* (1988) 46 Cal.3d 833, 854, overruled on other grounds in *People v. Crayton* (2002) 28 Cal.4th 346, 364-365; *Marsden*, *supra*, at pp. 124-125.) The rule requiring a *Marsden* hearing applies equally posttrial. "[T]he trial court should appoint substitute counsel when a proper [*Marsden*] showing has been made at any stage" because "[a] defendant is entitled to competent representation at all times" during the proceedings. (*People v. Smith* (1993) 6 Cal.4th 684, 695.)

5

Generally, the standard of review on appeal of a denial of a *Marsden* motion is abuse of discretion.  (*People v. Barnett* (1998) 17 Cal.4th 1044, 1085, citing *People v. Berryman*, *supra*, 6 Cal.4th at p. 1070.)  "An abuse of discretion occurs where the court's decision exceeds the bounds of law or reason."  (*People v. Bell* (1998) 61 Cal.App.4th 282, 287.)  A trial court may abuse its discretion in ruling on a *Marsden* motion without first hearing the defendant's reasons for the motion.  However, denial of a *Marsden* motion under these circumstances does not require reversal where the record shows that the failure to hold a hearing on the motion was harmless beyond a reasonable doubt.[5]  (*People v. Chavez* (1980) 26 Cal.3d 334, 348-349.)

Towards the end of his sentencing hearing, Edwards requested a *Marsden* hearing several times complaining that: 1) defense counsel told Edwards right before the court sentenced him that he would receive one-for-one conduct credit; 2) he had been forced to plead to a count that had been dismissed and was being required to pay restitution on that count; and 3) he did not understand anything that was going on and needed to see a psychiatrist.

Edwards never voiced any specific complaints regarding his representation by defense counsel, nor did he specifically ask the court to appoint substitute counsel. Nevertheless, assuming Edwards's complaints were sufficient to trigger the trial court's obligation to conduct a *Marsden* hearing and that the court implicitly denied Edwards's *Marsden* motion by its failure to rule on it, we conclude that if *Marsden* error occurred it was harmless.

In *People v. Washington* (1994) 27 Cal.App.4th 940 (*Washington*), the defendant made a *Marsden* motion in conjunction with a motion for new trial.  The trial judge never conducted a *Marsden* hearing but the Court of Appeal concluded the error was harmless.

---

**5**        *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).

The court reasoned: "[Defendant] has made no showing here either that his *Marsden* motion would have been granted had it been heard, or that a more favorable result would have been achieved had the motion in fact been granted. The failure to rule on the motion did not affect [defendant's] trial in any way. The motion was made only *after* he had been convicted. The basis for such a motion at such a time could have been only that his attorney had acted incompetently at trial or in filing the motion for new trial [citation] or, possibly, that [defendant] believed that counsel would be unable to represent him properly at sentencing. The fact that no *Marsden* motion was entertained does not preclude [defendant] from attacking the competency of his attorney.... We cannot see how the appointment of a different attorney would have gained [defendant] a new trial, or could have had any effect on the sentence imposed, and we, of course, are able to review [defendant's] claims that the sentence imposed was improper. We therefore conclude that the failure to consider the purported *Marsden* motion has not deprived [defendant] of any arguments or otherwise irrevocably affected the verdict or sentence. Under the circumstances, and on the record before us, we cannot see that [defendant] would have obtained a result more favorable to him had the motion been entertained." (*Washington, supra,* 27 Cal.App.4th at p. 944.)

Here, Edwards has not made any showing that his counsel was ineffective or that he would have received a more favorable result had the court granted his *Marsden* motion.[6] Nor can we see how appointment of counsel would have benefited him.

---

[6]    Edwards contends the United States Supreme Court decision in *United States v. Gonzalez-Lopez* (2006) 548 U.S. 140 (*Gonzalez-Lopez*) requires that *Marsden* error be found to be reversible per se. *Gonzalez-Lopez*, however, is not controlling because in that case, the court held that the denial of a defendant's right to counsel of choice was reversible per se (*Gonzalez-Lopez*, at pp. 147-150) and Edwards fails to explain why this holding should apply to counsel that is appointed for indigent defendants. Edwards also claims that although in *Marsden* our Supreme Court purported to apply a *Chapman* standard of prejudice, the language in the opinion made it clear that the court viewed *Marsden* error as reversible per se. However, recently in *People v. Sanchez* (2011)

7

Edwards made his requests for a *Marsden* hearing near the conclusion of his sentencing hearing. The only basis for a *Marsden* motion at that time was that defense counsel had not properly represented him in entering his plea. However, Edwards did not claim that defense counsel had provided inadequate representation during the change of plea proceedings and his main complaint with respect to his plea was that his plea agreement provided he would receive half-time conduct credit, i.e., one-for-one conduct credit, in prison. However, this claim is refuted by the transcript of the change of plea proceedings, which shows that the court clearly, albeit erroneously, advised Edwards that he would receive only 15 percent conduct credit in prison and that Edwards stated he accepted the plea even with this limitation on conduct credits he could earn. Further, the only other complaints Edwards voiced regarding the entry of his plea were that he was forced to enter a plea to a count that allegedly had been dismissed and that he was being required to pay restitution on that count. These complaints, however, proved to be unfounded because, as explained by the prosecutor, after the original count was dismissed, the remaining counts were renumbered. Moreover, the failure to rule on Edwards's *Marsden* motion did not preclude Edwards from attacking the competency of defense counsel in this appeal or in a petition for a writ of habeas corpus. Thus, in accord with *Washington*, we conclude that if *Marsden* error occurred, it was harmless beyond a reasonable doubt.

---

53 Cal.4th 80 (*Sanchez*), the Supreme Court reiterated that the *Chapman* standard of prejudice applies to *Marsden* error when it noted that in *Marsden* it reversed because it was not able to "'conclude beyond a reasonable doubt that [the] denial of the effective assistance of counsel did not contribute to the defendant's conviction.'" (*Sanchez*, at p. 92 quoting from *Marsden*, *supra*, 2 Cal.3d at p. 124.) Finally, Edwards contends that the Supreme Court's express approval in *Sanchez* of the appellate court's remand to the lower court to hold a *Marsden* hearing without a discussion of prejudice (*Sanchez*, at pp. 92-93) is evidence that *Marsden* error requires reversal per se. However, Edwards's reliance on this aspect of *Sanchez* ignores that, as noted above, in that case the court reiterated that *Marsden* error is not reversible if it was harmless beyond a reasonable doubt.

*The Equal Protection Claim*

"Section 4019, which specifies the rate at which conduct credit can be earned by those in local custody, has undergone numerous amendments in the past few years. Insofar as we are concerned, the version in effect when defendant committed his crimes provided for deductions for every six days of confinement, such that if all possible days were earned, six days were deemed served for every four days of actual custody. [Citations.]

"In conjunction with the '2011 Realignment Legislation addressing public safety' [citations], section 4019 was amended to provide for deductions for every four days of confinement, so that if all possible days are earned, four days will now be deemed served for every two days of actual confinement. [Citation.] Originally, this change was to apply to those confined for crimes committed on or after July 1, 2011. [Citation.] By further amendment made before the realignment legislation became operative, this date was changed to October 1, 2011. [Citation.] Pursuant to the October 1, 2011, amendment [citation], subdivision (h) of section 4019 presently states: *The changes to this section ... shall apply prospectively and shall apply to prisoners who are confined to a county jail ... for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law.*" (*People v. Ellis* (2012) 207 Cal.App.4th 1546, 1549-1550 (*Ellis*), italics added.)

In *Ellis*, we held that the most recent amendment to section 4019 applies only to eligible prisoners whose crimes were committed on or after October 1, 2011, and such a prospective-only application neither runs afoul of the rules of statutory construction nor does it violate the principles of equal protection. (*Ellis*, *supra*, 207 Cal.App.4th at p. 1548.) That finding relied heavily upon the California Supreme Court's opinion in *People v. Brown* (2012) 54 Cal.4th 314, where the high court held that a prior amendment to section 4019 that became effective on January 25, 2010, applied prospectively only. (*People v. Brown*, *supra*, at p. 318; *Ellis*, *supra*, at p. 1550.)

As noted earlier, the court awarded Edwards two-for-four presentence conduct credit. Edwards concedes that this court in *Ellis*, as well as other courts, have rejected his equal protection argument but he includes the argument for the purpose of possible

9

review by the California Supreme Court. In accord with *Ellis*, we reject Edwards's equal protection claim.

### *The Rule of Lenity Issue*

In a related argument, Edwards contends the rule of lenity requires that the more generous two-for-two credit provisions of the current version of section 4019 should be applied to presentence custody on or after October 1, 2011, for crimes that occurred prior to that date. We disagree.

> "The rule of lenity does not apply every time there are two or more reasonable interpretations of a penal statute. [Citation.] Rather, the rule applies '"only if the court can do no more than guess what the legislative body intended; there must be an *egregious* ambiguity and uncertainty to justify invoking the rule."' [Citation.] In other words, 'the rule of lenity is a tie-breaking principle, of relevance when "'two reasonable interpretations of the same provision stand in relative equipoise....'"' [Citation.]" (*People v. Manzo* (2012) 53 Cal.4th 880, 889.)

> "[U]nder the rule of lenity[,] California [courts] will '"construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit...."' [Citation.] However, application of the rule of lenity is inappropriate unless, after consideration of the intent of the statute, the canons of statutory construction, and an analysis of the legislative history, the statute is still ambiguous." (*In re Michael D.* (2002) 100 Cal.App.4th 115, 125.)

As noted above, section 4019, subdivision (h) provides: "The changes to this section … shall apply prospectively and shall apply to prisoners who are confined to [specified facilities] for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." While the first sentence of subdivision (h) expresses the Legislature's intent that application of the enhanced conduct credits are limited to defendants whose crimes are committed on or after October 1, 2011, the second sentence of the subdivision arguably implies any days earned by a defendant on or after October 1, 2011, should be calculated at the rate required by the current law.

10

This court and another court have addressed this ambiguity and interpreted section 4019, subdivision (h) to give effect to both sentences, such that neither sentence will be rendered inoperative, superfluous, void, or insignificant. In *Ellis*, we concluded: "In our view, the Legislature's clear intent was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011. [Citation.] The second sentence does not extend the enhanced rate to any other group, but merely specifies the rate at which all others are to earn conduct credits. So read, the sentence is not meaningless, especially in light of the fact the October 1, 2011, amendment to section 4019, although part of the so-called realignment legislation, applies based on the date a defendant's crime is committed, whereas section 1170, subdivision (h), which sets out the basic sentencing scheme under realignment, applies based on the date a defendant is sentenced." (*Ellis*, *supra*, 207 Cal.App.4th at p. 1553.)

In *People v. Rajanayagam* (2012) 211 Cal.App.4th 42 (*Rajanayagam*), the court concluded: "[W]e cannot read the second sentence to imply any days earned by a defendant *after* October 1, 2011, shall be calculated at the enhanced conduct credit rate for an offense committed before October 1, 2011, because that would render the first sentence superfluous." (*Id.* at p. 51.) The *Rajanayagam* court explained its reasoning: "[S]ubdivision (h)'s second sentence attempts to clarify that those defendants who committed an offense before October 1, 2011, are to earn credit under the prior law. However inartful the language of subdivision (h), we read the second sentence as reaffirming that defendants who committed their crimes before October 1, 2011, still have the opportunity to earn conduct credits, just under prior law. [Citation.] To imply the enhanced conduct credit provision applies to defendants who committed their crimes before the effective date but served time in local custody after the effective date reads too much into the statute and ignores the Legislature's clear intent in subdivision (h)'s first sentence." (*Id*. at p. 52.) We agree with the reasoning of *Ellis* and *Rajanayagam*.

11

Because the ambiguity cited by Edwards has been properly resolved by statutory construction of section 4019, subdivision (h), the rule of lenity is not applicable.

## **<u>DISPOSITION</u>**

The judgment is affirmed.