Filed 10/30/23  P. v. Carpenter CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ROBERT HERRON CARPENTER,<br><br>    Defendant and Appellant. | F084532<br><br>(Super. Ct. No. VCF416723)<br><br>**OPINION** |

        APPEAL from a judgment of the Superior Court of Tulare County.  Nathan G. Leedy, Judge.

        Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez and William K. Kim, Deputy Attorneys General, for Petitioner and Respondent.

-ooOoo-

### INTRODUCTION

        Appellant Robert Herron Carpenter appeals his jury conviction of aggravated kidnapping, forcible sexual penetration by foreign object, forcible oral copulation,

forcible spousal rape, assault with intent to commit rape, and corporal injury to a spouse. Appellant was sentenced to life with possibility of parole plus 12 years.

On appeal, appellant first argues, substantial evidence does not support his aggravated kidnapping conviction. Second, the court's jury instruction on the aggravated kidnapping was erroneous. And third, his sentence is unauthorized pursuant to Penal Code section 654[1], or alternatively that the case should be remanded due to the changes to section 654 enacted by Assembly Bill No. 518. We affirm.

## PROCEDURAL HISTORY

In a complaint filed in 2021, the Tulare County District Attorney charged appellant with kidnapping to commit spousal rape (§ 209, subd. (b)(1); count 1); sexual penetration by a foreign object (§ 289, subd. (a)(1)(A); count 2); forcible oral copulation (§ 287, subd. (c)(2)(A); count 3); forcible spousal rape (§ 262, subd. (a)(1); count 4); assault with intent to commit a felony (§ 220, subd. (a)(1); count 5); and corporal injury to a spouse (§ 273.5, subd. (a); count 6.)

It was further alleged that counts 2 and 3 were ineligible for probation or suspension of sentence pursuant to section 1203.065, subdivision (a).

In October 2021, a jury found appellant guilty of all charges.

In May 2022, appellant was sentenced to life with possibility of parole as to count 1, the middle term of six years for count 2, the middle term of six years for count 3 to run consecutive to count 2.[2] Appellant was further sentenced to the middle term of six years for count 4, the middle term of four years for count 5, and the middle term of three years as for count 6, to run concurrently.

Appellant filed a timely notice of appeal.

---

[1] Undesignated statutory references are to the Penal Code.

[2] A full, separate, and consecutive term is authorized for counts 2 and 3 pursuant to section 667.6, subdivision (c).

## STATEMENT OF FACTS

Appellant was the victim's husband. They were married for a second time in 2004. Before that, appellant and the victim were married for 19 years, then separated for 10 years. Appellant and the victim lived together in a two-story house.

On the morning of February 21, 2021, the victim was in bed when appellant approached her and told her, if she disrespected him, he was going to "beat the crap" out of her and sodomize her with a sex toy, and she would "get no warnings." Appellant then left the house to go to a golf tournament.

The sex toy was a penis extender appellant had previously attempted to use during intercourse with the victim. The victim refused to have sexual intercourse with the sex toy and told appellant "under no circumstance[s]" would she have intercourse with it. She demanded appellant throw it away.

Appellant came home around 3:30 p.m. He appeared agitated and rammed the front gate with his car. The victim was in the kitchen, and heard appellant yell at her to "open the fucking door" when he could not open the front door. Appellant then came into the kitchen and began preparing himself some food. He also repeated that the victim should choose her words very carefully because he was going to "beat the crap" out of her and sodomize her. He put his fist in the victim's face, telling her "this is what they get" when someone disrespects him.

At this point, the victim was standing in the corner of the kitchen, and appellant was moving between the kitchen and the living room. The victim said, "So you're going to be a wife beater." Appellant replied "Yes," and that the victim better not mention this to their two oldest sons, or else appellant would "beat the crap out of them" and shoot the victim.

Appellant then went back into the kitchen and told the victim, "In fact, right now, get down on your knees and suck my dick." The victim said, "No, this isn't right." As the victim responded, appellant knocked her to the ground and unzipped his pants, yelling

3.

"Suck my dick." When the victim refused, appellant said, "I'm going to twist your hand" and "I'm going to sock you in the head." Appellant then twisted the victim's right hand and punched her on the left side of her head, all while yelling, "Suck my dick." When the victim continued to refuse, appellant yelled, "I'm going to pull your hair" and "I'm gonna sock you in the rib," and he grabbed the victim's hair and punched her in the ribs.

The victim began praying loudly, and appellant said, "God will not help you" and said he would punch her in the nose. The victim said she knew if he hit her in the nose she would lose consciousness, so she started orally copulating appellant. When the victim stopped, appellant said "[L]et's take this upstairs." Appellant also told the victim "We'll do this whether you're conscious or unconscious."

The victim walked out of the kitchen with appellant behind her. Appellant walked her away from each of the house's three exits — one in the kitchen, one in a bathroom, and the front door. All of the exits were on the first floor. At the foot of the stairs, appellant stood next to the victim and reminded her that he would knock her unconscious if she did not comply.

Appellant and the victim went upstairs and into the bedroom. In the bedroom, appellant told the victim to take off her pants. The victim took off her pants and shoes, and appellant undressed completely. The victim got on one side of the bed, and appellant walked around to the other side and pulled out the sex toy.

The victim began to cry because she knew appellant was going to force her to have intercourse using the sex toy. Appellant sprayed the sex toy with something, and put lubricant all over the victim. Appellant then roughly grabbed the victim's legs and yelled at her to put her knees up to her ear which the victim could not do. Appellant repeatedly forced the victim to get off the bed and bend over, then get back on the bed while he tried to penetrate her. Appellant tried to penetrate the victim's anus, but the victim was squeezing her buttocks. The victim then used her hand to move the sex toy to her vagina.

4.

Appellant lost his erection and the sex toy fell off. Appellant said, "Well, we'll do this later," and wiped the lubricant off of his penis onto the victim's hair. Appellant then left the room, saying "We're going to do this later, and you better do what I like, and you better not squeeze your buttocks together."

The victim put on her pants and shoes, and walked calmly out the front door at the foot of the stairs so appellant would not hear her. When she opened the door, she ran, believing if she stayed she would lose her life.

**DISCUSSION**

I.      SUFFICIENT EVIDENCE SUPPORTS THE SECTION 209, SUBDIVISION (b)(1) AGGRAVATED KIDNAPPING CONVICTION

Appellant argues there is not substantial evidence to support an aggravated kidnapping conviction. Appellant asserts that there was not substantial evidence that the victim was moved a substantial distance that was not merely incidental to the target crime, and that the movement substantially increased the risk of harm. We disagree.

A.      *Legal Standard*

"A person who kidnaps or carries away an individual to commit robbery, rape, oral copulation, sodomy, or any violation of [enumerated statutes], shall be punished by imprisonment in the state prison for life with the possibility of parole." (§ 209, subd. (b)(1).) "This subdivision shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." (§ 209, subd. (b)(2).)

In 1997, the Legislature amended the aggravated kidnapping statute. (*People v. Robertson* (2012) 208 Cal.App.4th 965, 979 (*Robertson*).) In doing so, the Legislature codified the two-prong test of asportation for kidnapping set out in *People v. Daniels*

(1969) 71 Cal.2d 1119[3] in section 209, subdivision (b), but omitted the word "substantial" from the second prong. Thus, the modified asportation standard eliminated the requirement that the movement of the victim "substantially" increase the risk of harm to the victim. (*Robertson, supra,* at p. 980; See *People v. Vines* (2011) 51 Cal.4th 830, 869, fn. 20; *People v. James* (2007) 148 Cal.App.4th 446; *People v. Ortiz* (2002) 101 Cal.App.4th 410.)

On appeal, this court "must determine whether a reasonable trier of fact could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) We "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. (*In re Michael D.* (2002) 100 Cal.App.4th 115, 126.)

### B. Analysis

"Kidnapping to commit rape involves two prongs. First, the defendant must move the victim and this asportation must not be 'merely incidental to the [rape.]' " (*People v. Shadden* (2001) 93 Cal.App.4th 164, 168, (*Shadden*).) "Second, the movement must increase 'the risk of harm to the victim over and above that necessarily present in the [rape.]' " (*Ibid.*) "For the first prong, the jury considers the distance the defendant moved the victim and the 'scope and nature' of the movement. [Citations.] For the

---

[3] "[T]he intent of the Legislature in amending Penal Code section 209 in 1951 was to exclude from its reach not only 'standstill' robberies [citation] but also those in which the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself." (*People v. Daniels, supra,* 71 Cal.2d at p. 1139.)

second, it considers whether the movement gave the defendant 'the decreased likelihood of detection' and an 'enhanced opportunity to commit additional crimes.' " (*Ibid.*)

These two aspects are not mutually exclusive, but are interrelated. (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152, (*Dominguez*).) "The essence of aggravated kidnapping is the increase in the risk of harm to the victim caused by the forced movement." (*Ibid.*) A jury should consider various circumstances, including "whether the movement decreases the likelihood of detection, increases the danger inherent in a victim's foreseeable attempts to escape, or enhances the attacker's opportunity to commit additional crimes." (*Ibid.*)

"The appellate court must consider 'how all the attendant circumstances relate [] to the ultimate question of increased risk of harm.' [Citation.] Although the 'actual distance the victim was forced to move' is a 'relevant factor,' the Supreme Court has 'repeatedly stated no minimum distance is required to satisfy the asportation requirement.' Actual distance 'must be considered in context, including the nature of the crime and its environment….' " (*Robertson, supra,* 208 Cal.App.4th at p. 984.) The movement must be substantial. (*Dominguez, supra,* 39 Cal.4th at p. 1152.) Substantial movement in this context is movement that is " 'more than slight, brief or trivial.' " (*Shadden, supra,* 93 Cal.App.4th at p. 169.)[4] Further, the increased risk of harm may be of either physical or psychological harm. (*Robertson, supra,* at p. 984.)

Appellant relies on *People v. Stanworth* (1974) 11 Cal.3d 588, and *People v. Perkins* (2016) 5 Cal.App.5th 454 (*Perkins*) for the proposition that appellant's movement of the victim was not substantial and did not substantially increase the victim's risk of harm. Appellant's reliance on these cases is misplaced. *Stanworth*

---

[4] In *Shadden,* this language is in reference to the jury instruction CALJIC No. 9.54. (*Shadden, supra,* 93 Cal.App.4th at p. 169.) An instruction using the same language was given in this case.

predates the 1997 amendment to section 209 and relies upon the "substantial risk of harm" standard now superseded by statute.

In *Perkins*, the defendant was found guilty of two "one strike" enhancements pursuant to section 667.61: the aggravated kidnapping enhancement pursuant to subdivision (j)(1), and the simple kidnapping enhancement pursuant to subdivision (j)(2). (*Perkins, supra,* 5 Cal.App.5th at p. 463.) The aggravated kidnapping enhancement requires that the movement of the victim substantially increase the risk of harm to the victim. (*Id.* at p. 465.) The simple kidnapping enhancement requires that the defendant move the victim a substantial distance. (*Id.* at p. 464.) Because *Perkins* analyzes the "substantial risk of harm" standard, its analysis is not instructive on that issue.

As to movement, the *Perkins* court concluded that the victim's movement was not substantial when "[a]fter sodomizing he victim, defendant ordered her to move from the apartment's only bathroom to the apartment's only bedroom, a distance between only 10 and 30 feet." (*Perkins, supra,* 5 Cal.App.5th at p. 470.) However, the one-bedroom apartment in *Perkins* is not comparable to the two-story house in this case. *Perkins* is therefore distinguishable on its facts.

Appellant argues that because the prosecution failed to establish the actual distance appellant moved the victim, this forecloses that the distance was substantial. We find no legal support for this proposition. To the contrary, it is well established that actual distance is only one relevant factor, which must be considered in context with the nature of the crime and its environment. (*Robertson, supra,* 208 Cal.App.4th at p. 984.)

*Robertson* is instructive. In *Robertson*, the defendant conducted Christian services inside his detached garage, which was outfitted with several rows of pews, a pulpit and a large rectangular wooden tub that resembled a coffin. The tub was lined with black plastic and filled with water. (*Robertson, supra,* 208 Cal.App.4th at p. 972.) The defendant lured the victim, a member of his congregation, into the detached garage and raped her. (*Id.* at p. 972.) Prior to raping her, the defendant forced the victim to move

8.

from the back of the detached garage to the front, past two rows of pews and toward the tub. (*Id.* at p. 973.)

This court concluded the movement from the back of the garage to the front was not merely incidental to the rape. (*Robertson, supra,* 208 Cal.App.4th at p. 984.) This court found " '[w]here a defendant drags a victim to another place, and then attempts a rape, the jury may reasonably infer that the movement was neither part of nor necessary to the rape.' " (*Ibid.*) Likewise, that the movement occurred inside a garage was not dispositive. (*Id.* at p. 986.) " 'Where the movement changes the victim's environment, it does not have to be great in distance to be substantial.' " (*Ibid.*) This court then noted that "[o]nly when [the victim] was as far away from the back door as possible and near the tub did [the defendant] order her to undress and then raped her." (*Id.* at p. 985.)

In this case, appellant moved the victim from the kitchen in their two-story house, away from each exit on the first floor, up the stairs, and into a bedroom. Although the prosecution did not elicit an exact measurement of the distance between the kitchen and the bedroom, the jury was shown diagrams of the house and could draw the reasonable inference that the distance was not "slight, brief or trivial." (*Shadden, supra,* 93 Cal.App.4th at p. 169.) Likewise, substantial evidence supports the jury's conclusion that the movement was not incidental to the rape, because appellant did not begin to rape the victim with the sex toy until he forced her into the bedroom.

In *Robertson,* this court then concluded that the movement increased the risk of harm to the victim. (*Robertson, supra,* 208 Cal.App.4th at p. 985.) This court found moving the victim away from the back door reduced the possibility the victim could escape. (*Ibid.*) The movement also decreased the likelihood the detection because it was less likely that the victim's son could have heard her if she screamed for help. (*Ibid.*)

This court further found that moving the victim to the front of the garage next to the tub increased the defendant's opportunity to commit additional sexual crimes. (*Robertson, supra,* 208 Cal.App.4th at p. 985.) The defendant "positioning of the victim

in a secluded place by a full tub of water increased his ability to perform multiple unwanted sex acts without resistance or interruption." (*Ibid.*)

In this case, appellant moved the victim upstairs, not only away from the house's three exits but onto a different floor than the exits. The bedroom appellant moved the victim to was also more secluded than the kitchen where he began his assault. This both decreased the likelihood of detection and reduced the possibility the victim could escape. Likewise, the jury could also reasonably conclude that moving the victim to the bedroom, which gave appellant access to a bed, enhanced appellant's opportunity to commit additional crimes. We therefore find substantial evidence supports the jury's finding that the movement increased the risk of harm to the victim, and in whole substantial evidence supports appellant's conviction for aggravated kidnapping.

II.     THE COURT'S SECTION 209, SUBDIVISION (b)(1) JURY INSTRUCTION DID NOT VIOLATE APPELLANT'S DUE PROCESS RIGHTS.

Appellant argues the court's instruction on count 1 was erroneous, because it permitted the prosecution to prove a violation of section 209 based on kidnapping to commit spousal rape, oral copulation or sexual penetration, when the information only charged a violation of section 209 based on kidnapping to commit spousal rape. For purposes of our discussion, we presume that despite his failure to raise this claim below, appellant has not waived his argument. We conclude the instruction was not erroneous.

*A.     Background*

The information filed September 23, 2021, stated in relevant part:

> "On or about February 21, 2021, in the County of Tulare, the crime of KIDNAPPING TO COMMIT ANOTHER CRIME, in violation of PENAL CODE SECTION 209(b)(1), a FELONY, was committed by ROBERT HERRON CARPENTER, who did unlawfully kidnap and carry away [the victim] to commit SPOUSAL RAPE, A VIOLATION OF SECTION 289."

The court instructed the jury in relevant part:

"The defendant is charged in Count 1 with kidnapping for the purposes of rape, oral copulation or sexual penetration in violation of Penal Code Section 209 (b).

"To prove that the defendant is guilty of this crime, the People must prove that:

"Number one, the defendant intended to commit rape, oral copulation or sexual penetration;

"Two, acting with that intent, the defendant took, held or detained another person by using force or by instilling a reasonable fear;

"Three, using that force or fear, the defendant moved the other person or made the other person move a substantial distance;

"Four, the other person was moved or made to move a distance beyond that merely incidental to the commission of a rape, oral copulation or sexual penetration;

"Five, when the movement began, the defendant already intended to commit rape, oral copulation or sexual penetration;

"Six, the defendant did not consent to the move;

"And, seven, the defendant did not actually or reasonably believe the other person consented to the movement.

"As used here, substantial distance means more than a slight or trivial distance.  The movement must have increased the risk of physical or psychological harm to the person beyond that necessarily present in the rape, oral copulation or sexual penetration. [¶] …[¶]

"To be guilty of kidnapping for the purpose of rape, oral copulation or sexual penetration the defendant does not have to actually commit the rape, oral copulation or sexual penetration."

B.	*Legal Standard*

Section 209, subdivision (b)(1) states "A person who kidnaps or carries away an individual to commit robbery, rape, oral copulation, sodomy, or any violation of Section

11.

264.1, 288, 289[5], or former Section 262, shall be punished by imprisonment in the state prison for life with the possibility of parole."

A challenge to the jury instructions raises a mixed question of law and fact that is predominantly legal, and we review it under the de novo standard. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

C.     Analysis

Appellant does not appear to argue that the court's instruction on section 209 misstates the law, omits an element of the offense, or includes a theory of liability unsupported by the evidence. Appellant argues the error lies in the difference between the charges levied in the information and the language of the jury instruction. The Attorney General interprets this as a due process argument regarding fair notice of the allegations.

> " 'It is a fundamental rule of due process that a defendant must be given fair notice of any alleged crimes in order to mount a possible defense.' [Citation.] A defendant's right to fair notice applies equally to 'allegations that will be invoked to increase the punishment for his or her crimes.' [Citation.]
>
> "California law provides that: 'In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified.' (§ 952.) The accusatory pleading does not have to state the number of the statute, it may be 'in any words sufficient to give the accused notice of the offense of which he is accused.' [Citations.] …
>
> "Indeed, even if the People allege the wrong numbered statute, the pleading is still valid if it alleges facts sufficient to give the defendant fair notice of the alleged crime and/or sentence enhancement and the defendant was not prejudicially misled." (*In re Vaquera* (2019) 39 Cal.App.5th 233, 238-239.)

---

[5]     Sexual penetration by a foreign object is a violation of section 289, subdivision (a)(1)(A).

12.

In this case, appellant does not appear to argue that the information did not give him fair notice of the charge of aggravated kidnapping based on rape, or oral copulation or sexual penetration. We nonetheless briefly address this issue because it implicates appellant's due process rights.

Section 209, subdivision (b)(1) clearly states the offenses which may form the basis for an aggravated kidnapping charge. While the information filed September 23, 2021, alleges appellant "did unlawfully kidnap and carry away [the victim] to commit spousal rape," it also specifies the charge as "KIDNAPPING TO COMMIT ANOTHER CRIME, in violation of PENAL CODE SECTION 209(b)(1)." Appellant was therefore put on notice of the statute which the aggravated kidnapping charge was based on.

Appellant was also charged with oral copulation in violation of section 287, subdivision (c)(2)(A) and sexual penetration in violation of section 289, subdivision (c)(1)(A). Both of these crimes are listed in section 209, subdivision (b)(1) as qualifying target offenses for aggravated kidnapping. We therefore find the information alleged facts sufficient to give appellant fair notice that he could be convicted of kidnapping to commit spousal rape, or oral copulation or sexual penetration.

Appellant argues that the jury instruction could have led the jury to erroneously convict appellant of aggravated kidnapping on a legally invalid basis. However, as discussed above, the mere fact that a jury instruction that properly states the law and legal elements of a crime diverges from the exact words used to describe that offense in the information, does not render that jury instruction erroneous, so long as appellant had fair notice of the charges levied against him.

We will address one additional issue which implicates appellant's due process rights, and may arise when an allegation in an information diverges from the jury instructions — the issue of unanimity.

"As a general rule, when violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged,

13.

either the state must select the particular act upon which it relied for the allegation of the information, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty." (*People v. Jennings* (2010) 50 Cal.4th 616, 679.)

However, the jury need not agree unanimously on exactly *how* a crime was committed. (*People v. Russo* (2001) 25 Cal.4th 1124, 1135.) For example, if a defendant is charged with first degree murder, and the jury is instructed on multiple theories of first-degree murder (for instance, premeditation and felony murder), no unanimity instruction is required if there was evidence of only one murder. The jurors need not agree on the theory. (*People v. Chavez* (1951) 37 Cal.2d 656, 670–671.)

"The key to deciding whether to give the unanimity instruction lies in considering its purpose. The jury must agree on a 'particular crime' [citation]; it would be unacceptable if some jurors believed the defendant guilty of one crime and other jurors believed her guilty of another. But unanimity as to exactly how the crime was committed is not required. Thus, the unanimity instruction is appropriate 'when conviction on a single count could be based on two or more discrete criminal events,' but not 'where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event.' " (*People v. Russo, supra,* 25 Cal.4th at pp. 1134–1135.)

In this case, there was only one act of kidnapping, one discrete criminal event. There were multiple theories on how the kidnapping was committed — whether, in kidnapping the victim, appellant intended to commit rape, or oral copulation, or sexual penetration. But there was only one act — the kidnapping. Thus, a unanimity instruction was not necessary and the jury did not need to unanimously decide whether the kidnapping was for the purpose of committing spousal rape or oral copulation or sexual penetration.

Additionally, failure to give a unanimity instruction was harmless error. "The failure to provide a unanimity instruction is subject to the [*Chapman v. California* (1967)

14.

386 U.S. 18,] harmless error analysis on appeal." (*People v. Curry* (2007) 158 Cal.App.4th 766, 783.)

"Where the record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence, the failure to give the unanimity instruction is harmless." (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853.)

In this case, appellant was in fact convicted of spousal rape, oral copulation and sexual penetration. Therefore, the jury necessarily found beyond a reasonable doubt that appellant "intended to commit rape, oral copulation, or sexual penetration" as instructed by the trial court. Because the jury convicted appellant of *each* of the various offenses which could be the basis for the aggravated kidnapping conviction, failure to give the unanimity instruction was harmless error.

III. APPELLANT'S SENTENCE WAS NOT UNAUTHORIZED PURSUANT TO SECTION 654

Appellant argues the consecutive sentences on count 1 and count 2, and the concurrent sentence on count 4 violated section 654's prohibition against multiple punishments for a single indivisible course of conduct. Appellant then argues that he is entitled to "retroactive" application Assembly Bill No. 518's ameliorative amendment to section 654. We disagree.

A. *Section 667.6 Allows Multiple Punishments for Enumerated Sex Offenses Committed During An Indivisible Course of Conduct*

Generally, "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) "[T]he statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective." (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)

15.

Section 667.6 carves out an exception to this general provision for certain enumerated sex offenses. "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of an offense specified in subdivision (e) if the crimes involve the same victim on the same occasion." (§ 667.6, subd. (c).)

The enumerated sex offenses include, in relevant part, sexual penetration in violation of section 289, subdivision (a) (§ 667.6, subd. (e)(8); count 2), forcible oral copulation in violation of section 287 (§ 667.6, subd. (e)(7); count 3), and forcible spousal rape in violation of former section 262 (§ 667.6, subd. (e)(2); count 4).

It is well established that "the only reasonable interpretation of section 667.6(c) is that it permits imposition of consecutive full-term sentences, notwithstanding the provisions of section 654, when the defendant is convicted of an offense enumerated in section 667.6 [subdivision] (c), based upon the commission of a separate act that constituted part of an indivisible course of conduct." (*People v. Hicks* (1993) 6 Cal.4th 784, 792.)

Appellant acknowledges that count 1, count 2, and count 4 were based on separate physical acts.[6] Therefore, there is no dispute that count 2 and count 4 were offenses based upon the commission of separate acts against the same victim that constituted part of an indivisible course of conduct. Section 667.6, subdivision (c) excepts count 2 and count 4 from section 654's general prohibition against punishment of a single course of conduct under multiple provisions of law.

Ordinarily, "[w]e review under the substantial-evidence standard the court's factual finding, implicit or explicit, of whether there was a single criminal act or course of conduct with a single criminal objective." (*People v. Moseley* (2008) 164 Cal.App.4th

---

[6]     Specifically, appellant states "counts one, two and four were not a single physical act."

16.

1598, 1603.) However, there is no arguable error here. The court properly imposed a full, consecutive sentence as to count 2 and a full concurrent sentence as to count 4 pursuant to section 667.6, subdivision (c).

B. *Appellant Received the Benefit of Assembly Bill No. 518*

Prior to January 1, 2022, section 654, subdivision (a) read "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment…."

On January 1, 2022, Assembly Bill No. 518 amended section 654, subdivision (a) to read "An act or omission that is punishable in different ways by different provisions of law may be punished under *either* of such provisions…." (Emphasis added.)

Generally, amendments to statutes that reduce punishment for a particular crime apply to all defendants whose judgements are not yet final on the amendment's operative date. (*In re Estrada* (1965) 63 Cal.2d 740.) This retroactive principle "applies to ameliorative changes in enhancements as well as to substantive offenses [citation], and to changes in the law that merely allow for a possibility of reduced punishment." (*People v. Sek* (2022) 74 Cal.App.5th 657, 666.)

However, appellant was sentenced on May 23, 2022, almost five months after the amendments to section 654 went into effect. "The general rule is that a trial court is presumed to have been aware of and followed the applicable law." (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496.) "A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564, original italics.)

On May 23, 2022, the court had the following exchange:

> "THE COURT: Let me ask you a question. I agree with you. I would not characterize incarceration in the state prison as minimal. It's hard for me to understand any type of prison sentence Mr. Carpenter is looking at would be minimal, but is he even eligible for probation?

"MS. YOON: I would argue he is given the new law, the changes in 654, which allow for the court to not — before, the court was limited to sentencing under the most serious charge, and the new changes allow for the court to sentence under any of the provisions.

"And so my argument would be that the forcible rape and oral copulation are 654 with spousal rape, and the court can stay the sentences in the forcible penetration and oral copulation and sentence on the spousal rape."

The record clearly shows the court was informed of, and therefore aware of its discretion under the amended section 654. In the absence of any evidence to the contrary, we presume the court properly considered and exercised that discretion when sentencing appellant. Therefore, appellant has already received the benefit of Assembly Bill No. 518's amendment of section 654, and remand is not necessary.

## DISPOSITION

The judgment is affirmed.

FRANSON, J.

WE CONCUR:

POOCHIGIAN, Acting P. J.

SNAUFFER, J.

18.