Filed 3/27/14  In re Bernardo M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re BERNARDO M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BERNARDO M.,<br><br>Defendant and Appellant. | F065906<br><br>(Super. Ct. No. JJD062587)<br><br>**OPINION** |

## THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Kelly Babineau, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and John G. McLean, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Levy, Acting P.J., Franson, J., and LaPorte, J.†

†       Judge of the Kings Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

The court readjudged appellant, Bernardo M., a ward of the court after it sustained allegations charging him with willful violation of a court order (Pen. Code, § 166, subd. (a)(10)).[1]

On appeal, appellant contends: 1) he was denied procedural due process because the underlying petition cited the wrong code section; and 2) the evidence is insufficient to sustain the court's finding that he violated a court order. We affirm.

## FACTS

On September 4, 2012, at appellant's jurisdictional hearing, the prosecutor requested judicial notice that on July 19, 2011, appellant admitted allegations in a prior petition that he violated the association clause of an injunction issued against the Norteño gang. (§ 166, subd. (a)(9).) The court granted the prosecutor's request for the purpose of showing appellant was served with the injunction and his knowledge and understanding of its terms.

The prosecution then presented evidence establishing that on February 15, 2012, at approximately 9:49 p.m. in Cutler, Tulare County Sheriff's Deputy Carlos Lara stopped a Honda Accord driven by Bernardo Pena (Pena) because the light on the license plate was out. Appellant was seated in the front passenger's seat, Alberto Zavala (Alberto) was seated in the rear seat behind appellant, and Alejandro Zavala (Alejandro) was seated in the rear behind Pena.

When Deputy Lara approached Pena, he noticed Pena's eyes were red and watery, his speech was slurred, and there was an odor of an alcoholic beverage coming from the interior of the car. Lara recognized appellant from at least two previous contacts, including one a few months earlier when appellant was arrested in Orosi by the gang unit because he was intoxicated and belligerent. After having the back seat passengers roll

---

[1] All further statutory references are to the Penal Code.

2

down their windows, Lara saw a case of beer in the middle of the two rear passengers and an open container on the floorboard between the feet of each of them.

Deputy Lara further testified that Alejandro was wearing gang-related clothing consisting of a red belt with the number 14 on it, a gray and red striped Pendleton jacket that was mostly red, and black Nike Cortez shoes. Additionally, Alejandro told the deputy he associated with northern gang members. Deputy Lara arrested Alejandro for public intoxication and resisting arrest and appellant for violating the gang injunction by associating with Alejandro. Appellant admitted to Lara he had been served with the injunction and was aware of it.

Tulare County Sheriff's Deputy Joel Sanchez assisted Deputy Lara with the traffic stop. Deputy Sanchez had 10 to 15 prior contacts with appellant, the majority of them gang related. One contact occurred when appellant and another subject assaulted a Sureño gang member.

Tulare County Sheriff's Detective Steve Sanchez testified as a gang expert that the Sureño gang was created in the prison system in the mid-1950's and was known as the Mexican Mafia. In the late 1960's some members broke off and formed the Nuestra Familia gang, which ultimately became the Norteño gang and rivals of the Sureños. In the early 1980's Sureño gang members moving in from Southern California precipitated conflict between the Norteños and the Sureños. According to Sanchez, there are currently over 4,000 documented Norteño gang members in Tulare County. Further, in Tulare County different subsets of the Norteño gang often align themselves together for protection against the increasing number of Sureño gang members in the county. Norteño gang members identify themselves with the letters NF, the number 14, and the color red.

Detective Sanchez further testified that in order to be validated as a documented gang member a person must meet three of ten criteria that include admitting gang

affiliation, being named as a gang member by a reliable source, wearing gang clothing, having gang-related tattoos, possessing gang photos, being involved in a gang-related crime, and writing or possessing gang material. Sanchez testified Pena met four of the ten gang criteria, Alberto met three or more gang criteria, and Alejandro met three gang criteria, including wearing clothing or attire associated with the Norteño gang. According to Sanchez, all four car occupants were active Norteño gang members.

Detective Sanchez also testified that there is a certain level of trust among gang members, like a brotherhood. Because of this, it is common for gang members to associate with members of their own gang even when not committing crimes, for them to drive in vehicles together, and to congregate and drink alcohol together. According to Sanchez, if one of four people in a car is a gang member it is more common for the other people in the car to be fellow gang members than rival gang members.

**DISCUSSION**

*The Procedural Due Process Issue*

In 2011 former section 166 provided, in pertinent part: "(a) .... every person guilty of a contempt of court, or any of the following kinds, is guilty of a misdemeanor: [¶] ... [¶] (9) Willful disobedience of the terms of any injunction that restrains the activities of a criminal street gang or any of its members, lawfully issued by any court, including an order pending trial." (Stats. 2010, ch. 677, § 1, p. 3688.) Effective January 1, 2012, former section 166 subdivision (a)(9) was renumbered section 166 subdivision (a)(10), but was not amended substantively. (Stats. 2011, ch. 181, § 4, pp. 2278-2279.)

On May 17, 2012, the district attorney filed a petition alleging that on or about February 15, 2012, Bernardo committed the crime of disobeying a court order, "in violation of ... section 166(a)(9) ... by willful disobedience of a process and order lawfully issued by a court, to wit, ASSOCIATION CLAUSE (#1) OF PRELIMINARY NORTENO GANG INJUNCTION CASE #VCU237163."

4

Appellant contends he was denied procedural due process because although the instant petition alleged he violated section 166, subdivision (a)(9), he was prosecuted for violating section 166, subdivision (a)(10) and the evidence does not support a conviction under section 166, subdivision (a)(9). We will reject this contention.

> "'[D]ue process requires that a minor, like an adult, have adequate notice of the charge so that he may intelligently prepare his defense. [Citation.]' [Citation.] Compliance with this requirement has been held by the Supreme Court to mandate that the minor 'be notified, in writing, of the specific charge or factual allegations to be considered at the hearing, and that such written notice be given at the earliest practicable time, and in any event sufficiently in advance of the hearing to permit preparation.' [Citation.]" (*In re Robert G.* (1982) 31 Cal.3d 437, 442.)

> "'Under the generally accepted rule in criminal law a variance is not regarded as material unless it is of such a substantive character as to mislead the accused in preparing his defense, or is likely to place him in second jeopardy for the same offense.' [Citation.]" (*In re Michael D.* (2002) 100 Cal.App.4th 115, 128.)

Appellant made no argument in the trial court and did not contend in his opening brief that the petition did not adequately put him on notice of the charge against him. He merely claims the evidence does not support a violation of section 166, subdivision (a)(9). Since appellant, in effect, concedes he had adequate notice of the charges against him, we conclude the variance between the petition and the evidence is inconsequential.[2]

---

[2] In his reply brief appellant for the first time appears to argue that variance was significant because "although the [petition] does mention willfully disobeying a court order, that alleged conduct could have violated [subdivisions (a)(4) and (10) of section 166]" and "a defendant should not have to guess as to what charge he is defending." We summarily reject this contention because we will not address arguments raised for the first time in the reply brief. (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1295.)

5

*The Sufficiency of the Evidence Claim*

Appellant contends the evidence is insufficient to sustain the court's finding he violated the gang injunction because the evidence failed to establish he was aware any other occupants of the Honda he was riding in were gang members. We disagree.

> "Our review of [appellant's] substantial evidence claim is governed by the same standard applicable to adult criminal cases. [Citation.] 'In reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]' [Citation.] '"[O]ur role on appeal is a limited one." [Citation.] Under the substantial evidence rule, we must presume in support of the judgment the existence of every fact that the trier of fact could reasonably have deduced from the evidence. [Citation.] Thus, if the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. [Citation.]' [Citation.]" (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.)

Further, in order to prove appellant engaged in conduct that violated a gang injunction one element the prosecutor had to prove was appellant's *knowledge* of his associate's gang membership. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1117.)

Here, it was undisputed that appellant was a Norteño gang member. On the night of February 15, 2012, appellant was the front seat passenger in a car occupied by three other Norteño gang members. An open case of beer was on the back seat between the rear passengers and each of these passengers had an open beer located on the floorboard between their legs. Additionally, one rear seat passenger, Alejandro, was wearing a red belt with a 14 on the buckle and a gray shirt with red stripes that was predominantly red.

Detective Sanchez testified as a gang expert that Norteño gang members wear red and identify with the number 14, and that when not committing crimes, they congregate, ride in vehicles, and drink alcoholic beverages together. He also testified that because of

6

the influx of Sureño gang members into Tulare County, members of one subset of Norteño gang members will often align themselves with Norteño gang members from other subsets for protection from Sureño gang members.

The court could reasonably infer from appellant's presence in the car where some of its occupants were openly drinking from a case of beer in the back seat that he was friends with some or all of the occupants. It could also reasonably infer that as a Norteño gang member, appellant would know which of his friends were fellow gang members. Further, given the rivalry between Norteño and Sureño gang members, the court could have found it unlikely appellant would have gotten into a car or would have been allowed by the car occupants to board if they had not all determined they were fellow Norteño gang members. The court could also have found that as a Norteño gang member appellant would have recognized Alejandro as a fellow Norteño gang member from the red and gray Pendelton jacket, the red belt and the belt buckle with the number 14 that Alejandro was wearing. Further, appellant's conduct in riding around in a car with some of the occupants drinking beer was consistent with behavior attributed to Norteño gang members by Detective Sanchez. Accordingly, since the evidence amply supports the court's implicit finding that appellant was aware the other occupants of the Honda were Norteño gang members, we reject appellant's sufficiency of the evidence claim.

## DISPOSITION

The judgment is affirmed.