Filed 11/13/23  In re V.C. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re V.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>V.C.,<br><br>Defendant and Appellant. | F085980<br><br>(Super. Ct. No. 23JL-00022A)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Barton Bowers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Poochigian, Acting P. J., Detjen, J. and Snauffer, J.

Minor V.C. contends on appeal that the juvenile court's jurisdictional findings and disposition order must be reversed and remanded because (1) there is insufficient evidence to support his conviction for robbery; and (2) the juvenile court failed to apply Penal Code section 654 to his sentence.[1] The People disagree. We affirm.

## PROCEDURAL SUMMARY

On February 1, 2023, an original juvenile wardship petition was filed, pursuant to Welfare & Institutions Code section 602, alleging minor committed second degree robbery (§ 211; count 1), and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 2).

On February 3, 2023, minor denied the allegations.

On February 16, 2023, the juvenile court held a contested jurisdiction hearing. The court found both counts of the petition to be true.

On March 3, 2023, the court held a disposition hearing. Minor was adjudged a ward of the court and committed to a short-term home commitment program. He was released on probation to his mother's custody.

On March 21, 2023, minor filed a notice of appeal.

## FACTUAL SUMMARY

A.M., a high school student, met with A.B. and minor in his school's bathroom. They all went into a large stall together, where A.M. handed minor a "sploof"[2] and $10. In exchange, minor gave A.M. a "cart."[3] A.M. opened the "cart" and found it empty. When he told minor it was empty, minor pulled out his phone and said, " 'Wait. Let me text my boy.' "

---

[1] All statutory references are to the Penal Code unless otherwise noted.

[2] A "sploof" is a device that traps smoke from a vape pen.

[3] A "cart" is a marijuana cartridge for a vape pen.

A.M. asked minor for his money back. Minor responded, " 'What money?' " A.M. then said, " 'Both of you aren't leaving until I get my stuff back.' " A.B. said, " 'What the f[***]' " and " 'On RBL' "[4] and tried to push past A.M. A.M. repeated that he wanted his $10 back. A.B. and minor squared up for a fight as a bystander egged them on. Fourteen or 15 other students were in the bathroom at the time. Minor began swinging his fists at A.M. When A.M. grabbed minor's left arm, minor continued swinging with his other arm. Minor and A.M. slipped on the floor, covered with water and urine, as they struggled with each other, falling approximately three times. A.B. joined in the fight and helped minor beat A.M. in the corner of the bathroom stall. Minor kicked A.M. in the face and A.M.'s phone fell out of his pocket. The fight ended when A.B. and minor ran out of the bathroom.

After minor and A.B. left, A.M. discovered his AirPods case and $40 in cash were missing from his pockets, and his AirPods wireless earphones were missing from his ears. He recovered his phone on the floor of the bathroom, but did not find the other items. A.M. testified that he believed he saw A.B. "jump[] for" his AirPods case in the corner of the stall during the fight.

A.M. suffered a concussion, a knot on his forehead, and bruising from the fight.

Shortly afterwards, A.M. saw a video from the fight that someone posted to social media.[5] He testified that the video showed him lying on the floor of the bathroom with one of his AirPods lying next to minor's backpack. He testified that the video showed the second AirPod lying next to his leg. He stated at that point in the fight the video showed minor and A.B. outside the stall but still in the bathroom. The video did not show minor or A.B. holding the items.

---

[4]     Minor testified that "RBL" is a reference to a local gang.

[5]     The video was not entered into evidence as an exhibit. However, the video was played in court to refresh A.M.'s recollection while he testified.

A.M. also testified that in another social media video posted after the fight, in which minor "tagged"[6] A.M., minor wore a visible AirPod that looked the same as his missing AirPods. A.M. testified that he believed the Airpod minor wore in the video was one of the AirPods that went missing during the fight. On the video, minor said, " 'Tell bro to come get his s[***] back.' "[7] A.M. testified that he believed, because he was tagged in the video and minor was wearing what he believed was one of his AirPods, that minor was speaking to him.

## DISCUSSION

### I. SUFFICIENCY OF EVIDENCE

Minor contends there is not substantial evidence to support the juvenile court's robbery finding because there is insufficient evidence minor took anything from A.M. by force or fear. Minor argues that (1) A.M. willingly gave him the "sploof" and $10 in exchange for the "cart," and the ensuing fight was only because A.M. was dismayed the "cart" was empty; and (2) there is no evidence he took A.M.'s AirPods, AirPods case, and $40 during the ensuing fight and his only intent during the altercation was to fight A.M. The People disagree. We agree with the People.

### A. Law

We review the minor's contentions using the same standard of review that applies in adult criminal cases. (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.) "Specifically, we determine whether substantial evidence—'evidence that is reasonable, credible, and of solid value'—supports the juvenile court's findings. [Citation.] We view the evidence 'in the light most favorable to the prosecution and presume in support of the [findings]

---

**6** To be "tagged" on the social media post means A.M.'s social media account was named on the video and connected to it, such that he would be notified of the video's existence when it was published and others viewing the video would also see his account was attached to, or "tagged," in the video.

**7** The social media video post was also not entered into evidence as an exhibit, but was played in court while A.M. testified to refresh his recollection.

the existence of every fact the [court] could reasonably have deduced from the evidence.' [Citation.] We 'accept [all] logical inferences that the [court] might have drawn from the … evidence' [citation], but reject inferences ' "based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work." ' [Citation.] We will reverse only if ' "it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the [court's findings].' " (*In re I.A.* (2020) 48 Cal.App.5th 767, 778.)

"Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence." (*In re Michael D.* (2002) 100 Cal.App.4th 115, 126.) " 'The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.]' " (*People v. Harris* (2013) 57 Cal.4th 804, 849.)

Second degree robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§§ 211, 212.5, subd. (c).) A taking occurs when the defendant either gains possession or takes away the property from the victim. (*People v. Pham* (1993) 15 Cal.App.4th 61, 65.) " '[A] robbery occurs when defendant uses force or fear in resisting attempts to regain the property or in attempting to remove the property from the owner's immediate presence regardless of the means by which defendant originally acquired the property.' " (*Pham*, at pp. 65–66; *People v. Estes* (1983) 147 Cal.App.3d 23, 27–28.)

To establish that a robbery was committed by means of force, "it is established that something more is required than just that quantum of force which is necessary to accomplish the mere seizing of the property." (*People v. Morales* (1975) 49 Cal.App.3d 134, 139.) " '[T]he force need not be great ….' 'An accepted articulation of the rule is that " '[a]ll the force that is required to make the offense a robbery is such force as is

5.

actually sufficient to overcome the victim's resistance ….' " ' " (*People v. Montalvo* (2019) 36 Cal.App.5th 597, 618.)

"[A] conviction of robbery cannot be sustained in the absence of evidence that the defendant conceived his intent to steal either before committing the act of force against the victim, or during the commission of that act; if the intent arose only after the use of force against the victim, the taking will at most constitute a theft." (*People v. Morris* (1988) 46 Cal.3d 1, 19.)

Because a person's intent to steal is wholly subjective, it is generally manifested by circumstances surrounding the offense. (*People v. Gilbert* (1963) 214 Cal.App.2d 566, 567–568.)

### B.     Analysis

Here, there is sufficient evidence to support the juvenile court's robbery finding because there is substantial evidence on the record that minor took A.M.'s missing AirPods, AirPods case, and $40 during the fight.

We first address A.M.'s $40, Airpods, and Airpods case that went missing during the fight. Minor first argues there is insufficient evidence to support his robbery conviction based on these items going missing because there is no evidence on the record that minor took the items after they fell out of A.M.'s pocket and ears while they were fighting. He contends it is impossible to determine when the items were taken, or by whom.

The juvenile court was entitled to make reasonable inferences based on A.M.'s testimony about the fight and the video minor posted afterwards in which he told A.M. to " 'come get his s[***] back.' "

A.M. testified that the first video showed him lying on the ground during the fight, and that one of his AirPods was visible on the floor near his leg and the other was on the ground near minor's backpack. He said that after the fight ended and no one else was the bathroom with him, he discovered his AirPods that had been in his ears and his AirPod

6.

case and $40 that had been in his pocket were missing. He did not find them anywhere in the bathroom. A.M. testified that in the second video minor tagged A.M. and said, " 'come get [your] s[***] back,' " while wearing an AirPod that looked like A.M.'s missing AirPods. A.M. testified that because the video showed minor wearing an AirPod that looked like his, tagged him in the video, and told him to get his items, he believed minor was referring to him and his missing items in the video.

While minor argues someone else could have taken the items, "when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court." (*Bowers v. Bernards* (1984) 150 Cal. App. 3d 870, 874.) " 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.' " (*People v. Harris*, *supra*, 57 Cal.4th at p. 849.) Further, "[t]he uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable." (*People v. Scott* (1978) 21 Cal.3d 284, 296; see *People v. Panah* (2005) 35 Cal.4th 395, 489.) Based on A.M.'s testimony, the juvenile court could make the reasonable inference that minor took the items during the fight, as it was neither inherently improbable nor physically impossible.

Further, there was sufficient evidence in the record for the juvenile court to find that minor used force to take the items. A.M.'s testimony supports the reasonable inference that the force used by minor during the fight caused his items to fall out of his ears and pocket. A.M. testified that during the fight minor hit him multiple times, and

7.

that they fell to the ground approximately three times.[8]  Further, he testified that the video showed one of his AirPods on the floor of the bathroom during the fight, and that the fight caused his phone to also fall out of his pocket.  Because the evidence shows the force minor used in the fight was sufficient to overcome A.M.'s resistance, it was reasonable for the court to infer that the force used by minor during the fight caused the missing items to fall out of A.M.'s pocket and ears.  (See *People v. Montalvo*, *supra*, 36 Cal.App.5th at p. 618.)

Last, minor argues there is insufficient evidence he had intent to take the items during the fight.  However, A.M. testified that the video taken during the fight showed him lying on the floor and his AirPods lying nearby.  He also testified that after he was kicked in the face his phone fell out of his pocket, and he was able to grab it but could not find the other missing items.  Based on A.M.'s testimony, the juvenile court could reasonably infer that minor conceived the intent to take the items during the course of the fight.

Although the scenario minor describes, wherein he only intended to fight A.M. and someone else may have taken the items from the floor of the bathroom at an unknown time, is not impossible, this court's role on review does not involve a reevaluation of the evidence.  Rather, "we presume the existence of every fact in support of the verdict that could reasonably be inferred from the evidence."  (*People v. Booker* (2011) 51 Cal.4th 141, 173.)  Accordingly, there is sufficient evidence to support the robbery finding against minor.[9]

---

[8]     Minor does not dispute the juvenile court's finding that he committed assault (§ 245, subd. (a)(4)) against A.M. during the fight.

[9]     We need not address whether the taking of the $10 constitutes robbery, as the robbery of the AirPods, AirPods case, and $40 is sufficient to support the juvenile court's finding on count 1.

8.

**II. Section 654**

Minor next contends that the juvenile court failed to apply section 654 to his sentence because both counts 1 and 2 occurred at the same time and against the same victim.

The People agree that minor's offenses constituted a single, indivisible course of conduct, but contend section 654 was not implicated because minor was not removed from his mother's custody and only probation was ordered. Thus, there was no sentence of physical confinement to which section 654 could be applied. We agree with the People.

**A. *Background***

Minor was charged with second degree robbery (§ 211; count 1) and committing assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 2). The petition states the maximum term of confinement for minor, if consecutive, is four years. At the jurisdiction hearing, the juvenile court found both counts true.

Prior to the disposition hearing, minor was held in custody at a Juvenile Justice Correctional Complex (JJCC) for 33 days.

At the disposition hearing, the juvenile court adjudged minor a ward of the court and placed him under the supervision of a probation officer in his mother's home for a short-term home commitment program. The court stated,

> "It is the [c]ourt's intention to follow [p]robation's recommendation regarding the ultimate sentence, if you will, that is, [h]ome [c]ommitment. [¶] … [minor] is going to be released to [his mother] this morning. He's going to be ordered to stay at home. He can go to school, doctor's appointments, church, et cetera. If [his mother] need[s] to take him somewhere else, [she needs to] let [p]robation know in advance, because he will be on the electronic monitor."

During the hearing, the juvenile court did not discuss minor's 33 days of predisposition commitment, nor did it set a maximum term.

The minute order from the disposition hearing states minor is to be confined in JJCC for 33 days with 33 days of credit for time served.

### B. Law

#### 1. Section 654

Section 654 states, "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." (§ 654, subd. (a).)

Generally, whether a course of conduct is divisible depends on the defendant's objective and intent. (*Neal v. State of California* (1960) 55 Cal.2d 11, 19.) If the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. (*Ibid*.)

#### 2. Welfare and Institutions Code Section 726

Welfare and Institutions Code section 726, subdivision (d)(1) states,

> "If the minor is removed from the physical custody of the minor's parent or guardian as the result of an order of wardship made pursuant to [Welfare and Institutions Code s]ection 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the middle term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." (Welf. & Inst. Code, § 726, subd. (d)(1); see Cal. Rules of Court, rule 5.795(b).)

Welfare and Institutions Code section 726, subdivision (d)(1)'s requirement to set a maximum term of confinement applies only if the minor is removed from the physical custody of his or her parent or guardian. (*In re Ali A.* (2006) 139 Cal.App.4th 569, 571 (*Ali A.*).) Welfare and Institutions Code section 726, subdivision (d)(5) defines "juvenile hall" as a variety of " 'physical confinement.' " (Welf. & Inst. Code, § 726, subd. (d)(5).)

"When a juvenile ward is allowed to remain in his parents' custody, there is no physical confinement and therefore no need to set a maximum term of confinement." (*Ali A.*, *supra*, 139 Cal.App.4th at p. 571.)

### C. Analysis

Here, the parties agree that both counts 1 and 2 found true by the juvenile court arose from the same course of conduct pursuant to section 654.[10] However, the parties disagree about whether the court was required to apply section 654 based on minor's commitment to probation.

Here, the juvenile court was not required to apply section 654 at the disposition hearing because, although the court made minor a ward of the court pursuant to Welfare and Institutions Code section 602, he was not committed to physical confinement. Welfare and Institutions Code section 726, subdivision (d) is inapplicable where, as here, minor is not committed to physical confinement as a result of wardship. (Welf. & Inst. Code, § 726, subd. (d); *Ali A.*, *supra*, 139 Cal.App.4th at p. 572 [ "By its express terms, … section 726[, subd. (d)] applies only "[i]f the minor is removed from the physical custody of his or her parent or guardian .…"]; *In re Kazuo G.* (1994) 22 Cal.App.4th 1, 8 [" 'Probation' is nowhere defined in the juvenile court law, but there is little doubt that a grant of juvenile probation is an order of release into the community. That is, a minor placed on probation ordinarily remains in physical custody of the parent."].) Because minor was not sentenced to physical confinement, there was no commitment for either count that could be stayed as a result of minor's placement on probation, and thus, a section 654 analysis was unnecessary.

---

**10** As a threshold issue, minor first contends that the matter of whether the juvenile court failed to properly apply section 654 at sentencing is not forfeited despite defense counsel's failure to object at the disposition hearing. The People do not address this issue, and we agree with minor. (See *People v. Hester* (2000) 22 Cal.4th 290, 295 [Ordinarily, a section 654 claim is not waived on appeal by a defendant's failure to object in the trial court.])

11.

Accordingly, the juvenile court did not err by not addressing section 654 at the disposition hearing.[11]

## **DISPOSITION**

The juvenile court's disposition order is affirmed.

---

[11] Minor argues in his response that the juvenile court was required to state a maximum term based on minor's 33 days of predisposition confinement to JJCC, for which the minute order from the disposition stated he received 33 days of credit for time served. However, minor was not yet a ward of the court pursuant to section 602 at the time he was held at JJCC while awaiting the disposition hearing. Accordingly, section 726 was inapplicable to minor's predisposition commitment, and did not require the court to set a maximum term of confinement or apply section 654.